| 98 | 67 |
| 99 | 365 |

CASE 17—PETITION EQUITY—OCTOBER 9.

# Dennis Long & Co. v. City of Louisville.

APPEAL FROM JEFFERSON CIRCUIT COURT, LAW AND EQUITY DIVISION.

1. EMINENT DOMAIN.—The power of eminent domain, being in derogation of the right of the individual citizen to his property, should always be strictly construed.

2. SAME.—In the exercise of this power the property of the citizen can be taken only for a public use upon just compensation made, and the taking must be by judgment of a court of competent jurisdiction. There can be no such thing as a condemnation by estoppel.

3. SAME.—This power gives the right to take only so much of the property of the citizen as may be necessary to answer the public use for which it is taken.

4. SAME.—When an easement is granted for a particular purpose, when that purpose no longer exists there is an end of the easement.

5. SAME.—Where a city instituted proceedings to condemn a strip of land for railroad purposes, a defendant as to whom the proceeding was dismissed before verdict and judgment is not bound by the judgment rendered. And even though his property was condemned as the property of another, to whom compensation was made, and he with knowledge of the fact that this was to be done failed to make objection, it seems that such conduct on his part is not sufficient to estop him from resisting the claim of the city to his property or to an easement therein. But these facts, although pleaded as an estopppel, are not established by the evidence.

6. SAME.—As the city did not acquire any title to the land claimed by the defendant as to whom the proceeding was dismissed, his

Dennis Long & Co. v. City of Louisville.

assignees may now make all legal and equitable defenses to that proceeding that he could have made at the time judgment was rendered had he been a party of record. And any defect appearing in the title of the city at that time or that has since arisen can be made available in this action by way of defense.

7. SAME.—As the city had power under its charter to order the condemnation of property only when "needed for municipal purposes," it had no authority to order the condemnation of property for railroad purposes, having no authority to build or operate railroads.

8. SAME.—Even if the city had power to condemn a right of way for a railroad in order to carry out a contract with the railroad company, it had the power to condemn only so much land as was necessary for that purpose; and the city having conveyed to the railroad company in discharge of its obligation only a part of the strip of land condemned, it has no further right or easement in what remains, especially as that part of the strip has never been in its possession, and it now, after the lapse of eighteen years, sets up its claim for the first time.

O'NEAL & PRYOR FOR APPELLANT.

1. The appellee never had title to any part of the land in controversy.
2. This is in effect and substance an action to quiet title, and can not be maintained in equity against appellant, who is in the actual possession of the land and in good faith asserting title thereto.

A court of equity will not, under the color of abating a nuisance, try title and give possession. (Ky. Stats., sec. 11; Kincaid v. McGowan, 88 Ky., 81; Rhea v. Forsyth, 37 Pa. St., 503; King, v. McCully, 38 Pa., 76; White v. Booth, 7 Vt., 131; Shield v. Arndt, 3 Gr. Ch'y, 234; Caldwell v. Knott, 10 Yerg., 209; Hart, &c., v. Mayor, &c., 3 Paige, 213; Heiskel v. Garr, 3 B. Pa., 430; Fussell v. Gregg, 113 U. S., 550; Lewis v. Cocke, 23 Wall., 466; Van Allen v. Rogers, 1 John, Ch., N. Y., 283; Swayne, &c., v. Burk, &c., 12 Pet., 11; Stockton v. Williams, 1 Doug. (Mich), 546; Savage v. Allen, 54 N. Y., 458; Bishop of Chicago v. Chinnigny, 74 Ill., 317; Echelkamp v. Schrader, 45 Mo., 505; East, &c., R. Co. v. East Tennessee, &c., R. Co., 75 Ala., 275; Smith v. Jamison, 91 Mo., 31; Benner v. Kendall, 21 Fla.,, 584; Gatewood v. Leak, 99 N. C., 375; Rogers v. Cross, 3 Chand., Wis., 34; Cameron v. White, 3 Tex., 152; Lamb v. Drew, 20 Ia., 15; Blackwood v. Vanvleet, 11 Mich., 252; Robinson v. Joplin, 54 Ala., 70; Arnold v. Eright, 41 Mich., 207; McGee v. Smith, C. E. Green, 462; Conway ex parte, 4 Ark., 302; Manchester Cotton Mills v. Town of Manchester, 25 Grat., 825; Tomlinson v.

Dennis Long & Co. v. City of Louisville.

Ruthie, 16 Cal., 202; Boinay v. Coates, 17 Mich., 411; Gately v. Weldon, 14 S. W. Rep., 680; Moore v. Gatliff, 12 S. W. Rep., 139; High on Injunctions, 2 ed., sec. 745; Story's Eq., Pl. (10th ed.), 476.)

3. The appellant has been in the actual, adverse and continuous possession of the land for fifteen years before the filing of this suit, and the statute in such cases is a bar to this action.

Section 1, article 5, chapter 71 of the General Statutes, has no application, because the strip of ground in question is neither a street, alley nor other public easement. (Long & Co. v. L. & N. R. Co., 89 Ky., 544.)

4. The appellee has entered into an unlawful and champertous contract with the Louisville & Nashville Railroad Company under which this action is being prosecuted at the expense and for the benefit of the railroad company, and not in good faith by the appellee. (Brown v. Beauchamp, 5 Mon., 413; 3 Am. & Eng. Enc. of Law, 68; Redmond, et. al., v. Sanders, 2 Dana, 68; Wash v. McBrayer, 1 Dana, 565; Wells Lathrop v. Amherst Bank 9 Met. (Mass.), 489; Slade v. Rhodes, 2 Dev. (N. Car.), 24; Best, Assignee of Planter v. Strong, &c., 2 Dev. (N. J.), 319.)

5. For years the appellee has assessed the land in question as the property of appellant, and has compelled the appellant to pay taxes and other charges against it, and is now estopped to claim the same. (Adams County v. B. & M. R. Co., 39 Ia., 507; Lucas v. Hart, 5 Ia., 415; American Emigrant Co., v. Iowa R. Co., &c., 52 Ia., 323; Bullis v. Noble, 36 Ia., 618; Iowa R. Co. v. Storey Co., 36 Ia., 48; Simplot v. City of Dubuque, 49 Ia., 630; Erie R. Co. v. M. & E. R. Co., 21 N. J., Eq., 283; City of Chicago v. Wheeler, &c., 25 Ill., 478; Union Depot Co. v. City of St. Louis, 8 Mo. App., 412; Hannibal & St. Joe R. Co. v. Marion County, 36 Mo., 204; Union Depot Co. v. City of St. Louis, 76 Mo., 393; Rose v. Mayor, &c., 51 Md., 256.)

6. The appellee is estopped from claiming that appellant's fence is a nuisance, because the fence was built where it runs under an agreement with appellee and the vendor of appellant.

PIRTLE & TRABUE, PHELPS & THUM, ALFRED SELLIGMAN AND O'NEAL & PRYOR, COUNSEL FOR APPELLANT.

H. S. BARKER AND HELM & BRUCE FOR APPELLEE.

1. The property condemned includes that now enclosed.

2. The disclaimer of Dennis Long in the condemnation suit, and the acts based on that disclaimer, estop defendant from claiming any part of the land condemned.

Dennis Long & Co. v. City of Louisville.

3. If the order of June 17, 1873, entered in the old condemnation case, be considered to embrace all the property owned at that time by the heirs of Wm. Preston, either jointly or separately, so as to affect the property involved in the present case, then the order was an absolute nullity, because it was not *a judgment of the court*, but merely purports to have been entered *by the consent of the city attorney*, whereas he had no authority whatever to give such consent. It was not within the general scope of the authority of an attorney at law. (Smith's heirs v. Dixon, &c., 3 Met., 438; Dodd v. Dodd, 9 Barr, 315; Township of North White-hall, v. Kellar, 100 Pa. St., 105; s. c., 45 Am. Rep., 361; Kirk's Appeal, 87 Pa. St., 243; s. c., 30 Am. Rep., 357; 1 Am. & Eng. Enc. of Law, 954.)

If the general council of the city had itself attempted to give back this property to the Preston heirs without consideration, it would have had no power to do so. (Roberts v. City of Louisville, 89 Ky., 95.)

4. The demurrer to the plea of limitation was properly sustained. ·

The city acquired only an easement in the property condemned in the case of City of Louisville v. Hall, and, therefore, section 1, of article 5, chapter 71, General Statutes applies, even if it be construed literally. (Kelly v. Donahue, 2 Met., 482; Washington Cemetery v. Prospect Park and Coney Island R. Co., 68 N. Y., 593; Clarke v. Worcester, 125 Mass., 230.)

A judgment of condemnation must be construed in connection with the statute, and, if possible, reconciled with it. (Gear v. Dubuque, &c., R. Co., 20 Ia., 523; s. c., 89 Am. Dec., 552.)

But it is immaterial whether the city acquired the fee or only an easement, as the statute referred to covers a case where the city holds the fee as well as the case where it has only a technical easement. The expression "public easement" is not used in the sense which the common law gives to the word easement.

A statute is to be interpreted in the light of the reason and purpose of the law. (Mason v. Rogers, 4 Litt., 377; Sams v. Sams, 85 Ky., 400; Bailey v. Commonwealth, 11 Bush, 691; Philips v. Pope, 10 B. M., 172.)

5. The fact that the city has assessed the property in controversy as belonging to defendant and that defendant has paid taxes thereon to the city, does not operate as an estoppel. (Davis, Moody & Co. v. City of Louisville, MS. Op., Feb. 24, 1883.)

6. There is nothing in the case tending to establish *champerty*, or an agreement to divide the recovery.

JUDGE GRACE DELIVERED THE OPINION OF THE COURT.

This is an appeal from a judgment of the Jefferson Cir-

cuit Court, wherein it was adjudged that the city of Louis-
ville is the owner of a perpetual easement in and right of
way over a certain strip of land then in the possession of
Dennis Long & Co. (an incorporated company), said strip
of land being of an average width of thirty-seven and one-
half feet and extending from Jackson street on the east to
Preston street on the west, being a distance of five hundred
and thirty-one feet. Said judgment declaring the right of
the city of Louisville in this strip of ground in itself and its
assignees to construct, maintain and operate a railroad with
such tracks and other appurtenances to a railroad as may
be desirable, over and upon and along said strip and with
the right for the purposes aforesaid to the exclusive posses-
sion of said land, and to such other rights therein as were
acquired by the said city in the property condemned by it
in the case of the City of Louisville v. Joseph Hall and
others in the Jefferson Court of Common Pleas, decided in
1873. The judgment concludes by ordering Dennis Long
& Co. to remove from said strip of land all fences and other
obstructions that have been placed upon said strip by de-
fendant or those under whom it claims, within thirty days
from the date of the judgment.

Plaintiff's claim is founded solely on certain condemna-
tion proceedings instituted by it in the Jefferson Court of
Common Pleas, in the spring of 1873, style, City of Louis-
ville v. Hall and others. A full and complete copy of the
record in that case is filed as an exhibit in this case by plain-
tiff, and made part of its petition. As introductory to that
suit, plaintiff's counsel in their brief say: "That some
time prior to May, 1872, the city of Louisville agreed with
the Louisville, Cincinnati and Lexington Railway Company
that if it would remove its depot and tracks from Jefferson

street over to a location near the river, and following the general course of the old bed of Beargrass Creek, the city would condemn and furnish to the company a right of way and depot grounds in that locality. Accordingly, on May 18, 1872, an ordinance was passed by the city council directing the institution of condemnation proceedings in the name of the city for the purpose just mentioned and along the general route just described."

The right of the city of Louisville to condemn property for municipal purposes is laid under this clause found in an act of the legislature of Kentucky, amending the charter of the city which took effect March, 1872, and is as follows, viz:

"Whenever, in the opinion of the general council, property should be needed for municipal purposes, either within the boundaries of the city or the county of Jefferson, said council may, by ordinance, order the condemnation of such property." This act is quoted by counsel for the city and no other authority is referred to. The ordinance under which the proceedings were instituted is copied into the original case and reads as follows:

"An ordinance for the condemnation of ground and improvements for the purpose of making a road-bed for the Louisville, Cincinnati & Lexington Railroad.

"Section 1. Be it ordained by the general council of the city of Louisville, That the city attorney be and he is hereby directed to institute the necessary proceedings for the condemnation of such property as may be needed in order to construct a road-bed from the line of the Louisville, Cincinnati & Lexington Railroad, north to Pocahontas street, thence along said street to Beargrass Creek bed and along the line of Beargrass Creek bed and Water street, west to

First street, as designated in the map of the city engineer as No. 3, upon the above described route.

"Approved May 18, 1872.

Signed,          "JNO. G. BAXTER, Mayor."

This ordinance was filed with the original suit and with same a map was filed marked Exhibit No. 2, made part of that suit and copied into this record. Plaintiff said in that suit "that from the point where the said road-bed strikes the bed of Beargrass Creek along the designated line, the space required will vary from 120 feet in width to 40 feet in width, according to the map here filed and made part hereof." Again the petition says "the space and quantity of ground required from each of the above named owners is minutely and accurately set out and described in said map, and as being within the red lines."

In the original suit of condemnation proceedings, Dennis Long was made a party defendant and the statement was made in the petition that he was one of the owners of the lands sought to be condemned. To that petition Dennis Long filed an answer showing that he was the owner of four lots of ground fronting on Fulton street (north of Beargrass Creek and Water street), about three hundred and eighty feet, and running back to the center thread of the ancient bed of Beargrass Creek, as described in one deed, and to the old bed of Beargrass Creek in the other deed.

In said answer Dennis Long filed the deeds under which he claimed and owned the property sought to be condemned, lying as it did between Jackson street on the east, and Preston street on the west. These deeds showed a consideration paid by Long for this property of $34,200, and in addition he gave a detailed history of the valuable improvements he had made on same, their location, and the use to which they were applied, Long being a foundryman and

owning and operating on said property a large foundry, then chiefly devoted to making iron pipes, the annual business of said Long being then estimated at $800,000, and declaring his purpose to be, and that the demands for his products required him, to further extend the capacity of his works to $1,500,000 per annum. And said answer pointed out specifically how and why the property he owned, and every foot of it, was necessary for his purposes, and showing that same could not be taken from him for any purpose without great damage to his entire possessions and business.

To this answer no reply was ever filed, and the only thing shown by the record in reference to Dennis Long, and as a termination of the suit to condemn any of his property, is, that on the 28th day of May. after the jury had been sworn and when a part only of the evidence had been heard, "the plaintiff comes by its attorney and on its motion it is ordered that this cause be discontinued as to the defendant Dennis Long."

As said, this order was made before the finding of the jury, and before any judgment of condemnation was rendered by the court.

So that whatever may have been the rights acquired by the city of Louisville in that case, or whatever may have been done or adjudged in that suit, Dennis Long, not being a party to it, is not bound by it.

Certainly neither his property nor his possession was ever condemned by that proceeding.

There was no adjudication in that suit that a foot of his property was needed for the purpose of building this railway track for the Louisville, Cincinnati and Lexington Railway Company, nor was any of same taken for that purpose, nor was any easement established or declared in favor

Dennis Long & Co. v. City of Louisville.

of said railway or the city over his property or possessions, nor was any compensation made him therefor.

These propositions so self-evident, upon the face of the record, are not questioned by counsel for the city of Louis ville.

So that whatever may be the force and effect of this power of "eminent domain" under which this right of condemnation is laid, and is supposed to exist, and which is appropriately defined to be "that sovereign power vested in the people by which they can, for any public purpose, take possession of the property of any individual, upon just compensation paid to him," such power, although primarily lodged in the State, may from time to time be granted to other corporate bodies, as to cities for municipal purposes, and to railroad companies engaged in the public service as common carriers," and others, but always for some public use.

Of this public use the State is usually the recognized judge, and her action in declaring a public use is seldom questioned by the courts.

Incident to this power, however, always accompanying it, and as a constant and wholesome restraint upon same, are these two questions of fact—first, whether the property sought to be taken is really and in fact necessary for this public use, and second, the question of just compensation, these two questions of fact always being subject to the determination of a jury, and to be approved by the court.

Confessedly upon the record there has been no condemnation of the property, or any part of it, of Dennis Long. This power of "eminent domain" is said by Mr. Cooley to be in derogation of the right of the individual citizen to his property, and that such power should be always strictly construed.

In this case all effort to exercise it was abandoned upon the record.

The plaintiff, the city of Louisville, comes now, however, and says that in lieu thereof and as a substitute therefor, it is entitled to this easement in and over the property of Dennis Long, by an "equitable estoppel *in pais.*" Truly at first blush this strikes the mind of the court as a wide departure from the mode established by the constitution, and the law of the State. Under this claim of an "equitable estoppel *in pais*" the real estate of the citizen is sought to be taken, without condemnation, without the verdict of a jury that it was necessary for the public use as claimed, without any approving order of a court of competent jurisdiction, and without compensation.

Are all the safeguards thrown around the citizen specifically pointed out and enjoined by the constitution and declared by the courts to exist, to be utterly disregarded, we might say defied, and the property of the private citizen taken by an "equitable estoppel *in pais?*"

We confess that it could only be upon an overwhelming weight of authority that this court could possibly sanction such a doctrine.

While this doctrine of an "equitable estoppel *in pais*" has been often appealed to both to establish a right and to maintain a defense, yet no authority has been cited, and we are aware of none, where this doctrine has been extended so far as it is claimed in this case.

The ground relied upon by the city of Louisville to establish this estoppel briefly stated is this: That it says it was seeking to condemn for the purposes aforesaid, a strip of ground along the bed of Beargrass Creek, one hundred and ten feet in width, and as laid down on a map filed in the original suit, and designated as the condemnation map. And

that it being uncertain whether this strip embraced any of the land owned by Dennis Long, that said Long in order to determine that fact had an order of survey by the court authorizing him to survey his land, and this having been done, the surveyor reported to Long and his attorney that the strip of one hundred and ten feet did not embrace any of the land of the defendant Long, and that Long and his attorney reported that fact to the attorney for the city, and that thereupon the attorney for the city had the order entered discontinuing said cause as to said Dennis Long.

The city now alleging that upon the making of this order Dennis Long left the court room "knowing full well that said cause would proceed and that the property sought to be condemned would be condemned as the property of others, and that the plaintiff, the city of Louisville, would pay others than him, the amount found by the jury as damages to which the owners thereof were entitled on account of the condemnation of the property sought to be condemned."

And plaintiff proceeds to say, in substance, that said cause did proceed and that the property of the several owners was condemned, including the aforesaid property (meaning Dennis Long's property), between Jackson and Preston streets, and that the city paid to the several owners the sums so assessed, and that thereupon the court declared the title of the property in the city of Louisville, and that the city thereafter improved same by making the fill on same for the Louisville, Cincinnati & Lexington Railroad Co., plaintiff insisting all the while in this suit that the entire property between the two red lines on the condemnation map, was thus condemned, and that the title to same, to this width, was vested in the city of Louisville, whereby plaintiff claims this estoppel. Defendant, Dennis Long &

Co. (a corporation), claiming under Dennis Long, and
charged with notice, denies that the jury, by their verdict,
assessed the damage on this property of his between Jack-
son and Preston streets, in favor of any one, denies the
court vested the title to same (at least in so far as same
was claimed by Dennis Long), in the city of Louisville.

And after denying other material allegations in plaintiff's
petition, says that after the filing of Dennis Long's answer
in court, he with the surveyor and with some other party,
agent or surveyor of the railroad company, went on the
ground to examine and survey same, and that there the per-
son or party representing the railroad company pointed out,
indicated and represented to the said Long that at that point,
between Jackson and Preston streets, the city or the railroad
company, for whose benefit this condemnation was being
made, would not need the whole width of one hundred and
ten feet, but would deflect or go round the property of Den-
nis Long, in the making of said embankment and location
of said railroad, and that relying upon this statement and
seeing that the city had discontinued the suit against him,
he then left the court room and paid no further attention to
the matter, but the defendant says that in fact, the city, in
making said fill, did place its dirt so that same, at the base
and up the side of the embankment, did run over on his prop-
erty.

These allegations of defendant are supported in the main
by the testimony of Dennis Long, taken before his death,
said Dennis Long testifying that immediately after the city
made said fill, he removed his fence and set it up on the side
of this fill, where it has ever since remained, except that
after the conveyance by the city of Louisville to the Louis-
ville, Cincinnati & Lexington Railroad Company, the said
company desiring to make some further fill at that point,

the,said Dennis Long, by written agreement (now lost), with Mr. Wilder, the president of the company, did temporarily remove his fence, which, as soon as the improvement was made, he rebuilt, but at the urgent request of the president at that time, he set it some five or six feet further north, where it has ever since been and where it still remains.

As a matter of fact, a careful inspection of the record in the condemnation suit does not support the contention of the city of Louisville. The jury found on that trial damages in favor of forty-three owners and claimants, the several amounts in damages to which they were entitled. Of course, Dennis Long was not one of these, as the suit had been discontinued as to him. The court did not fix or establish these red lines one hundred and ten feet apart uniformly, nor condemn the property within same to the city. And to show this conclusively we copy the judgment on the verdict of the jury. It is as follows:

"It is therefore adjudged by the court that the title to the property described in the foregoing verdict be and the same is hereby vested in the city of Louisville, this judgment to take effect upon the payment into court by the city of Louisville, of the several sums of money specified in the foregoing verdict."

Thus it will be seen there is not a line in this judgment establishing the red lines on the map of one hundred and ten feet in width and across the lots of Dennis Long, between Jackson and Preston streets, as being the land condemned to the city. This land was embraced in no finding by the jury.

Again, at a later day, some of the parties to the proceeding, having secured a new trial, the cause as to them was by agreement submitted to the court, and the court, after awarding to these parties, severally, the amounts due them

in damages (neither of these findings affecting the land of
Dennis Long), adjudges "that the title to said property be,
and the same is hereby, vested in the city of Louisville, this
judgment to take effect on the payment into court, by the
city of Louisville, of the several sums of money named in
the foregoing judgment."

Neither in this judgment was there anything declaring
the right of way condemned to be the width of one hundred
and ten feet, nor did it establish it over the property of
any other person than those named in the finding. We have
thus copied these two judgments in full, and they are the
only ones relied upon by the city as investing it with any
title in and to this right of way, to the extent of one hundred
and ten feet.

Plaintiff in its suit says that in its original suit it sought
to condemn one hundred and ten feet. · In reply it may be
said that even if this be true, it is not what a plaintiff
seeks to do, but what the judgment finally entered declares,
that can possibly bind even parties thereto, or that can de-
fine the rights to which a plaintiff is entitled under such
proceedings, and that judgment must and does speak by
the record. It is no such uncertain thing as an "equitable
estoppel *in pais.*"

Again plaintiff's often repeated assertion that in the orig-
inal suit it sought to condemn for this right of way one hun-
dred and ten feet is subject to some qualification. While
it is true that plaintiff said that the land it sought to con-
demn was embraced within the red lines on that map, and
while those lines are shown to indicate a space of one hun-
dred and ten feet between same, yet plaintiff, in its orig-
inal petition says "that from the point where the said road-
bed strikes the bed of Beargrass Creek, along the desig-
nated line, the space required will vary from one hundred

and twenty feet in width to forty feet in width, according to the map filed."

And again in an amended petition in the original suit, plaintiff, on filing a letter from General Wm. Preston, in which it says said Preston donated certain of his land to the city for the purpose indicated, says: "That defendant, Wm. Preston, has, by writing, filed herein as a part of this petition marked XX, relinquished so much of his ground within the space designated, as is necessary for said road-bed, being a space sixty-six feet in width on the top surface of said road-bed." As this exhibit filed and relied upon by plaintiff throws some light on this question, as to the width of the strip of land sought to be condemned, we make the following extracts. After speaking of his refusal to relin-quish the whole bed of Beargrass Creek to the city for this purpose, he says:

"I have had a conversation with General St. John, which confirms my first impression that the great width of the right of way which I was requested to concede arose from the breadth necessary for the outer base of the embank-ment, beyond the vertical line marking the breadth of the roadway on its surface. I learn that sixty feet is that mini-mum which would be appropriate for the necessities and convenience of travel; this I am willing to grant. The nar-rowness of my property would make it a great sacrifice to yield more without compensation. . . . After conferring with General St. John in detail, I understand it, substantial-ly, to give the right of way as fully and completely as his original recommendation to the committee of the city coun-cil suggested and recommended."

So it is by no means clear that one hundred and ten feet was the width sought to be condemned, much less that that width was actually condemned, nor across the lands of Den-

nis Long, by any possible implication. Plaintiff's counsel in their brief say "that the greater part of these lands lying along Beargrass Creek belonged originally to William and Frances Preston, and had been partitioned between them and sold off to other parties (at the time of this condemnation), that those fronting on Fulton street (being the Dennis Long property), ran back south to the creek and that those fronting on Washington street ran back north to the creek." This was doubtless true.

And it will be noticed that the condemnation map filed in the original suit shows the lots of Dennis Long running back as his deeds call, to the ancient bed of the creek, and that the only other property owners whose lots lay immediately south of the lots of Dennis Long, were the Louisville Gas Company and Cornwall & Brother, and that the map on file shows but a small portion of these lots within the red lines of the map at this place, and this was far south of the property of Dennis Long, and the condemnation of these lots of the Gas Company and of Cornwall & Brother could not possibly affect the property of Dennis Long. The amount of damages awarded by the jury to these parties, the Gas Company and Cornwall & Brother, was one cent each.

The original petition says that this map shows by definite boundaries, the owners of all property within the red lines sought to be condemned, and it shows the names of no other owner of any land on the opposite side of the square, between Jackson and Preston streets, and opposite Long's property, than the Louisville Gas Company, and Cornwall & Brother.

There is one other reference in the amended petition in the original suit that it may be contended applies to the property condemned and to which plaintiff now says Dennis Long disclaimed title, and that reference is as follows:

"That the defendants, the heirs of Frances Preston, de- ceased, are the owners of or claim to own that portion of ground situated between Brook street and Preston's upper line (this is shown to have been at Shelby street, some six squares away), as marked on the map filed, and the north · side of Water street and the south water line of the creek, that same contains 51.372 square feet and that said space is required for the municipal purpose aforesaid."

Thus it will be seen that if (without any designation on the map filed, to show this ownership in the heirs of Fran- ces Preston), it should be claimed that this is the land of Dennis Long, for which payment was made to other persons than himself when condemned, it will be seen in a mo- ment that this·can not be true, the allegation being that Frances Preston's heirs claimed to the *south water line of the creek*, not to the center of the creek, and it is neither alleged nor in evidence that the possession of Dennis Long & Co. at this time is south of the south water line of Beargrass Creek. So that with the condemnation map and the proceedings in the old suit before us, the verdict of the jury and the judgment of the court, we conclude that the facts set up and relied upon as an "estoppel *in pais*," are not established by the evidence.

The question as to the extent of this right of way and whatever easement was created thereby has heretofore been before this court in a suit by the Louisville & Nashville Railway Co. v. Dennis Long, said railroad company being the assignee of the Louisville, Cincinnati & Lexington Rail- road Co., who was assignee of the city of Louisville, the present plaintiff, found in  89 Ky. Reports, 544.  On this question the court then said:

"A road-bed was constructed upon which a double track was laid, and the right to the use of this road-bed, sixty feet

in width, by the company [meaning the Louisville, Cincinnati & Lexington Railroad Company] is unquestioned. The questions arise between Dennis Long, the appellant, and the railroad company, the latter filing its petition in which it is alleged that the defendant, Long, was about to erect a fence on the side of and within the one hundred and ten feet of ground, so as to affect the enjoyment of the casement and the proper operation of the road by the company.

"It appears affirmatively that this assertion of right by the appellant (Long) does not affect or interfere with the road-bed in any way, or with the rights of the appellee, unless the company is entitled to the use of the entire ground. In the case of the City of Louisville against Hall and others, the object of the condemnation was to obtain this strip of land for railroad and sewer purposes, the record in that case plainly indicating that the appellee was not to occupy over sixty feet of ground. . . . When the fill was constructed, and the road-bed completed, the city conveyed to the railway company, 'its title to the road-bed, bridges and right of way from near the round-house of the Louisville, Cincinnati & Lexington Railway Company, east of Southall street, along Pocahontas street and the old bed of Beargrass Creek to Brook street; also all the land belonging to the city between Brook street and Second street, and the south line of the wharf and the north line of Water street, to be used for depot purposes,' &c. When the route reaches Brook street, between that and Second, all the land of the city is conveyed for depot purposes, but east of that the right of way is given over the one hundred and ten feet, so as to operate a double-track railroad. The double track as laid is now being operated, and, from the facts of the record, it is manifest the city intended to part with sixty feet of the

Dennis Long & Co. v. City of Louisville.

strip for railroad purposes until it reached Brook and Sec-
ond, where all the land was given."

In that opinion it will be noticed that the court spoke of
the case in a general way so far as the city of Louisville was
concerned, as having acquired a fee simple title to one hun-
dred and ten feet of land along Beargrass Creek; but, this
was said in the suit wherein the city of Louisville was not
a party, and wherein the court could not, as a matter of law,
adjudge anything between the city of Louisville and Den-
nis Long, saying "if Long had trespassed outside of the right
of way, the action was in the city of Louisville." The court
said:

"This is upon the idea that Long has no title or one in-
ferior to that held by the city; but as between these parties,
Long and the city, no such question being presented by the
record, this opinion is not intended to affect the rights of
either." It is noticed now that plaintiff repudiates the
idea of having ever acquired a fee simple title to any part
of this one hundred and ten feet of land, but that it bases its
right of action in this case solely on its having acquired an
easement only. It is now apparent, from the facts dis-
closed in this case, that the city of Louisville did not acquire
any title to the land claimed by Dennis Long.

Dennis Long & Co. may now make all legal objections,
and all legal and equitable defenses, to that proceeding that
Long could have made at the time the judgment was ren-
dered, had he been a party of record. While neither he nor
his assignees are bound by same, yet the city of Louisville
must rely upon same as its sole and exclusive foundation
for any right claimed by the city, and any defect appearing in
its title, either then or that has since arisen, can be made
available by way of defense by Dennis Long & Co., in this
suit.

It occurs to us that on the facts, as disclosed in that record and in this, there is no equity in plaintiff's petition.

And first as to this power of "eminent domain" in the city to condemn the property of the defendant. The only section in the charter of the city supposed to authorize this to be done, is as follows:

"Whenever, in the opinion of the general council, property shall be needed for municipal purposes, either within the boundary of the city or county of Jefferson, said council may, by ordinance, order the condemnation of such property." It has not been suggested to the court that the city of Louisville had any general authority to build and operate railroads, and such power, we think we may safely say, is not one of the usual municipal powers, nor is it incident to any power which the city of Louisville was authorized to exercise.

If these propositions be correct, then the city could not say this ground was needed for any legitimate municipal purpose, and yet it must be needed for such to authorize the exercise of this power of "eminent domain" by taking the property of the private citizen. It is only claimed that the city was in this instance authorized to exercise this power by reason of its contract with the Louisville, Cincinnati & Lexington Railroad Co., by which it undertook and agreed with that company that if it would surrender to the city the depot grounds and right of way then owned by it, on Jefferson street, that then the city would furnish to the company this new right of way, sufficient for a double track railway, along the line indicated, to First street, and sufficient depot grounds on or near that street.

This, then, was the extent of its undertaking; this and nothing more is expressed in the ordinance of the council directing proceedings to be commenced to condemn a right

of way and depot grounds for this company.   Conceding for the moment that by this contract, this became such a municipal object and purpose, as authorized the condemnation of the property in question, it could not, under the constitutional limitation before noticed, have condemned or have acquired by this proceeding any more ground or any greater right of way, whether by fee simple title or by way of easement, than was required and reasonably necessary for that purpose.   This limitation is one that, in the very nature of the thing, must exist, and one that the courts have uniformly upheld, that is the right to take only so much of the property of the citizen, as may be necessary to answer the public use for which it is taken.  The city had the right to take that much but no more.

Now, when this condemnation was made, and the fill upon the land taken was completed, and when the city came to turn this property over to the railway company, in discharge of its contract, it has been adjudged by this court in the case of the Louisville & Nashville Railroad Company (who was the purchaser from the Louisville, Cincinnati & Lexington Railroad Company), that the city of Louisville only conveyed to said Louisville, Cincinnati and Lexington Railroad Company sixty feet of ground for the location and operation of its double line of railway track along this line of Beargrass Creek, and that same was done in full satisfaction of the obligation and contract of the city of Louisville to furnish the Louisville, Cincinnati & Lexington Railway Company this right of way.

The Louisville, Cincinnati & Lexington Railway Company accepted same in full satisfaction and discharge of the obligation of the city of Louisville under its contract.   Said railroad company has never complained since of the right of way fixed at sixty feet, which it accepted; it is not com-

plaining now.   The city of Louisville does not allege in this action that it is under any other obligation to the Louisville, Cincinnati & Lexington Railway Company, by reason of its contract in reference to this right of way.   It does not say that the balance of this one hundred and ten feet of ground, which it says it condemned, is in any way necessary to the operation of the railway, even by a double track along this line.

The city of Louisville does not even allege in its petition that the balance of this strip, which it has not conveyed to the Louisville, Cincinnati & Lexington Railroad Company, is necessary to the city for *any municipal* purpose either general or special.

When we consider that the sole right of the city to condemn the property of the citizen was but to fulfill its contract with that railroad company, and when this has long since been done, and when the city has been fully discharged from all liability under same, how can it be possible that it can now come into court and by an "equitable estoppel *in pais*" extend its title, claim and possession not now nor ever heretofore in its possession under said condemnation proceedings.   And all this against one who was not a party to the record, nor bound by the judgment.   When the city had discharged its obligation to the railway company all further right and title of easement in its favor over any other property was by operation of law extinguished.

It should be noted further that this suit was not filed until October, 1891, more than eighteen years after the proceedings and judgment in the original condemnation pro ceedings, and that the city is now, for the first time, attempting to set up this "equitable estoppel *in pais*" against the face of the record.

In support of this view of the court we cite Washburn on

Easements, 4th edition, section 533.    He says:    "It is
stated as a general proposition that 'if an easement for a
particular purpose is granted, when that purpose no longer
exists, there is an end of the easement.'   The cases in which
this doctrine has been applied have been chiefly, though not
always, those of public easements."   (Same as in this case.)
Again, the same author says, section 535: "The general doc-
trine is stated to be:   'Where a 'right, title 'or interest is de-
stroyed or taken away by the act of God, operation of law, or
act of the party, it is called an extinguishment,' and 'an ease-
ment is one of the rights that may be extinguished or de-
stroyed.' "    Both of these texts are sustained by citations of
authority, both English and American.

We find a recent case in Oregon, wherein these principles
are stated and approved, and numerous cases cited in sup-
port of same.    The Oregon case may be found in 13 L. R. A.,
158—Hahn v. Baker Lodge, etc. [21 or 30.]            ,

In addition to the considerations before suggested, it
should not be overlooked that quite a number of years ago,
and when the suit of the Louisville and Nashville Railroad
Company against Dennis Long was contemplated, the
attorney of the city of Louisville gave a written opinion
that the city had no further interest in or right over any
part of this strip of 110 feet of land.    Since its conveyance
to the Louisville, Cincinnati and Lexington Railroad Com-
pany, as a matter of fact the city has never attempted to ex
ercise such right until the filing of this suit.    Not only have
we this declaimer of right by the city, but this right has
been as long and as persistently denied by Dennis Long and
those claiming uder him.

We think to establish it now, in the face of all these facts,
would be a dangerous precedent.

Mr. Kent says (3 Kent, Comm.. sec. 449) that if the act

which prevents the servitude be incompatible· with the nature or exercise of it, and be done by the party to whom the servitude is due, it is sufficient to extinguish it. And if it be extinguished for a moment, it is gone forever.

The view of the court as herein indicated being unfavorable to the right of plaintiff, makes it unnecessary to notice sundry other questions presented by the pleadings and in argument, such as the effect of the statute of limitations, and whether same was available in behalf of defendant in this case. Also as to the effect of the plea of champerty interposed by defendant.

Neither need we notice the legal effect of a consent judgment entered between the city and the Wm. Preston heirs, including Mrs. Pope, under whom Dennis Long & Co. claim one of the lots over which this right of easement is asserted. Neither need we notice the legal effect of the estoppel pleaded by defendant, in the matter of improvements made by it under ordinance of the city, over the disputed strip of ground, nor the collection of taxes for same by the city.

Neither need we notice more in detail than we have done, the question of boundary in this case further than to say that it is not claimed that Dennis Long & Co. have moved their southern fence further south since the filing of .the suit by the Louisville & Nashville Railroad Company against them. Nor is it claimed that their fence interferes with the sixty-foot right of way which this court decided was conveyed by the city to the Louisville, Cincinnati & Lexington Railroad Company.

Neither need we notice the sewer which by amended petition was named by the city as one of the municipal purposes for which the city condemned this ground. No complaint is made in this suit by the city of any interference by Dennis Long & Co. with any right of the city in reference to the

same. In addition the evidence shows that this sewer is located and built along the southern line of this strip of land, fifty feet or more away, and south of the possession of Dennis Long & Co.

Wherefore it is ordered by the court that the judgment rendered by the court below in this case in favor of the city of Louisville against Dennis Long & Co. be set aside and held for naught, and that in lieu thereof a judgment be rendered by the lower court dismissing plaintiff's petition, with costs.