O. N. BEIM et al., Appellees, v. JULIA A. CARLSON et al., Appellants.

No. 39680.

1002

NOVEMBER 12, 1929.

REHEARING DENIED FEBRUARY 22, 1930.

*John Fletcher*, Attorney-general, and *Ben Gibson*, for L. A. Andrew, State Superintendent of Banking, appellant.

*Charles Hutchinson*, *F. T. Van Liew*, and *Theodore F. Mantz*, for City of Des Moines and Allen Munn, County Treasurer, appellants.

*Havner, Flick & Powers*, for Julia A. Carlson, appellant.

*Davis, McLaughlin & Hise*, for appellees.

*Paul N. Williams*, for D. E. Williams, appellee.

WAGNER, J.—This case presents for our determination two controversies: one, as between the plaintiffs, as assignees of a mortgage, and the city of Des Moines; and the second, as between Julia A. Carlson, the owner of the land, and said city.

The real estate in controversy was formerly owned by A. W. Carlson, who died testate, December 13, 1912; and by reason of the provisions of his will, his widow, the defendant and crosspetitioner, Julia A. Carlson, is now the owner thereof. The plaintiffs ask foreclosure of a mortgage upon 145 acres of real estate, securing 22 notes, each in the amount of $1,000, which was executed on September 6, 1922, by Julia A. Carlson to the Iowa Loan & Trust Company. The Iowa Loan & Trust Company sold and transferred 10 of said notes to the plaintiff Beim, six to the plaintiff Davis, three to the plaintiff Earle, two to the

plaintiff Williams, and one to the plaintiff Sandell, and executed an assignment of the mortgage. The mortgaged real estate includes the east half of the southwest quarter and the east 12 acres of the southwest quarter of the southwest quarter of Section 21, Township 79, Range 23. There is no question as to the good-faith ownership by the plaintiffs of their respective notes before maturity, and the assignment of the mortgage securing the same.

It is apparent from the record that, some years ago, Frederick M. Hubbell was interested in a plan of his own to obtain a boulevard across the land in controversy and other land, said boulevard to run in a northeasterly direction from what is known in the record as Douglas Street to and beyond the northeast corner of the city of Des Moines. It was apparently his plan that the city should not be put to any cost for obtaining the land upon which the boulevard was to be constructed. The real estate between Douglas Street and the northeast corner of the city of Des Moines is owned by various parties, and the distance between said two points is in excess of 4,500 feet, approximately 2,100 feet of said distance being across the Carlson land. Pursuant to his plan, Hubbell took up negotiations with Carlson, and on March 3, 1911, A. W. Carlson, now deceased, and his wife, Julia A. Carlson, for the consideration of $1.00, which was not paid, executed a deed, in which the city of Des Moines is named as grantee, the deed reciting as follows:

"Do hereby sell and convey unto the said city of Des Moines, the following described premises, situated in the county of Polk and state of Iowa, to wit: The right of way for the purpose of maintaining and establishing thereon a street, boulevard or avenue, over and along a strip of land seventy (70) feet in width over and across the east one half of the southwest quarter (E 1/2 SW 1/4) and the east 12 acres of the southwest quarter southwest quarter (SW 1/4 of SW 1/4) of Section 21, Township 79, Range 23."

This deed was filed for record April 17, 1911, and duly recorded. It was not obtained by any representative of the city, but was obtained by Hubbell, as a part of his plan. On June 10, 1912, Hubbell submitted to the mayor and city council his proposed plan, in a letter or petition, which is as follows:

"Gentlemen: I have at considerable expense, obtained the right-of-way for a Boulevard from the center of Section 31-79-23 in a diagonal direction across Section 29 to the intersection with Douglas Avenue near Douglas School House. I had it in my plan to obtain the right-of-way for this Boulevard through Section 21-79-23 passing through the northeast corner of the City of Des Moines and terminating at the West School House where there are four cross-roads, north, east, south and west.

"I have obtained the right-of-way across two parcels in Sec. 21 but am unable to proceed further without the assistance of the City, so I hereby petition your Honorable Body to take the necessary steps to condemn the remainder of the right-of-way which lies in the City of Des Moines, and trusting that the award shall be reasonable, I will undertake to pay it as soon as it is ascertained. At any rate, I will pay the costs, except that I do not wish to pay the City's attorneys for preparing the papers.

"If my petition is granted I shall proceed to request the Board of Supervisors to ascertain the damages to extend this Road from the northeast corner of the City to the northeast corner of Section 21, also at my own expense.

"Trusting that my petition will be promptly granted, I am,

"Yours truly,

"[Signed] F. M. Hubbell."

On August 14, 1912, the city council adopted a resolution instructing the city attorney to institute the necessary legal proceedings to acquire the right of way by condemnation for a street running from the northeast corner of the city of Des Moines southwesterly across Section 21, Township 79, Range 23. The land included in the resolution does not include the Carlson land. It appears that condemnation proceedings were instituted, and that the damages allowed by the condemnation jury were deemed excessive by Mr. Hubbell, and on August 30, 1913, in a communication to the city council he stated:

"On account of the excessive damages that have been allowed to the property owners whose land was sought to be taken for the extension of Avenue Frederick Hubbell, from Douglas School House to the northeast corner of the city, in Sec. 21-79-23, I have concluded to abandon all further effort to extend said Avenue beyond its intersection with Douglas Avenue."

On October 22, 1913, the legal department of the city reported to the council that, unless a resolution should be passed to abandon the project, "this department will necessarily conclude that it shall proceed further in the premises;" and on November 26, 1913, the city council adopted a resolution abandoning the proceedings in the continuation of Avenue Frederick Hubbell. In addition to the record of the city council upon the subject, Fred T. Van Liew, a member of the city council at the time, testified:

"It seems that Mr. Hubbell's ambition was to construct a boulevard northeast from the closely built-up portion of the city to the northeast corner of the town, and I think beyond that corner to the corner of the county, and that it was his proposition to compensate the city for cost of condemnation, and that he had some personal pride in the fact that this boulevard was named after himself. * * *

"I remember Mr. Hubbell writing a letter or sending a communication to the city council abandoning or ordering the withdrawal or abandonment of this proceeding. My attention is called to Exhibit F-1 [Hubbell's communication of August 30, 1913, hereinbefore set out]. As I recall these matters, these were referred to the legal department, with instructions to carry out the instructions of Mr. Hubbell, and abandon the continuation of Avenue Frederick Hubbell on its intersection with Douglas Avenue in the city of Des Moines.

"It was my understanding we were chopping off Frederick Hubbell Avenue at Douglas Avenue,—that is my recollection of it,—because Mr. Hubbell, who was putting up the money and using the machinery of the city to acquire this road or boulevard, would not agree to put up any more money, and the city council was not disposed to advance any money for that purpose. He was using the machinery of the city to acquire this property at his expense. There was no other way of getting the property. He enlisted my interest, as a member of the city council, in getting proceedings to acquire the right of the ground, so that street could be opened and improved on through to the northeast city limits. That was a part of his scheme. His letter was along the line of the conversation he had with me and the other members of the council. Q. Was it an abandonment of the

project, or an abandonment of the condemnation proceedings? A. He was abandoning the whole project. Q. Who was? A. Hubbell, and the city, because of his request. We directed the legal department to abandon whatever they had started."

It perhaps is not amiss to say that Avenue Frederick Hubbell also extends in a southwesterly direction from Douglas Avenue to East Eighteenth Street and Grand Avenue, as now located. Until the appropriation by the city of the land, subsequent to October 30, 1922, the Carlson farm was fenced, cultivated, and used like any other farm, without any road or street crossing it. In other words, it was used by the Carlsons just as it had been used before, without any molestation by Hubbell or the city; and on September 6, 1922, Mrs. Carlson executed the aforesaid mortgage, without any reservation of any portion thereof, and warranted the title thereto against all persons whomsoever.

There can be no doubt, from the evidence, that the project of continuing or constructing Avenue Frederick Hubbell through the Carlson farm was entirely and completely abandoned in 1913, by both Hubbell and the city of Des Moines.

On October 30, 1922, the city council adopted a resolution of necessity for the opening and improving of Avenue Frederick Hubbell from Douglas Avenue to the northeast corner of the city. It provides:

"Be it Resolved by the City Council of the City of Des Moines: That it is deemed advisable and necessary to open, extend, widen, grade and improve Avenue Frederick Hubbell, from Douglas Avenue to the northeast corner of the city, said Avenue as extended to be sixty-six (66) feet in width and to be a projection northeasterly of said avenue on the same course as it is now located between Tiffin Avenue and Douglas Avenue and the following tracts of ground are hereby designated as a street and dedicated to the public for street purposes, to wit: [The Carlson land is not included in the description of the real estate.] * * *

"Be it further resolved that the legal department be, and it is hereby, directed to immediately, upon final passage of this resolution, proceed to secure, by condemnation proceedings or otherwise, the ground included within the territory described

hereinabove necessary for the opening, extending, widening, grading, and improving of said Avenue Frederick Hubbell for street purposes, and when title to said ground is thus procured, the same to be dedicated to the public as a part of Avenue Frederick Hubbell and for street purposes."

This contemplated improvement was made across the Carlson land and other land, and, so far as the city was concerned, was an entirety. There is no declaration therein that the strip of land across the Carlson farm was part of the extension of Avenue Frederick Hubbell. There is no action by the city declaring that portion across the Carlson land as a street.

Acting under the aforesaid resolution, the city proceeded to open, pave, and otherwise improve this extension of Avenue Frederick Hubbell, and to assess as costs against the Carlson property its proportionate share thereof, and issued certificates therefor, the amount of the street-opening certificates being $7,608.21, and the amount of the improvement certificates being $9,881.57. There is testimony that, at the time of the taking possession of this strip, it was over the protest of Mrs. Julia A. Carlson. There is no controversy as between the plaintiffs and Julia A. Carlson, who filed a cross-petition.

L. A. Andrew, receiver of the Iowa Loan & Trust Company, holds a second mortgage against the real estate, and it was so decreed. As to the contentions of the respective parties, his interests are identical with those of the plaintiffs, and our determination of the rights of the other contending parties will be determinative of his rights. Therefore, no further mention need be made as to said mortgage. It is the contention of the plaintiffs and Julia A. Carlson that the acts of the city in taking possession of said alleged street and attempting to improve the same at the expense of the property described in the mortgage are null and void. As to this contention, the trial court found for the plaintiffs, but against the cross-petitioner, Julia A. Carlson, on the ground of estoppel. In the decree, the court found:

"That each of said notes [the notes in suit] are negotiable paper, and each of said plaintiffs were purchasers of each of said notes before due, for a valuable consideration, and without any notice on the part of each of said plaintiffs of any claim on

the part of the city of Des Moines to a strip of land improved by the city as a part of Avenue Frederick M. Hubbell.

"The court further finds that the plaintiffs are entitled to have their said mortgage foreclosed; that the lien of said mortgage shall be established against the real estate described in said mortgage, and upon all buildings and improvements thereon; and that the lien of said mortgage is paramount and superior to any and all rights, liens, interests, or claims of the defendants, and each of them, in and to the said real property described in said mortgage. * * *

"The court further finds that the several proceedings on the part of the city of Des Moines to improve the said strip of land known as Avenue Frederick M. Hubbell, and charge the expense of such improvements to the land described in plaintiffs' mortgage, as against the lien and interest of these plaintiffs, and as against the claim of L. A. Andrew, receiver, above described, were without power or authority on the part of said city, and, as against these plaintiffs, and as against the said claim of L. A. Andrew, receiver, are void and of no effect. * * *

"The court finds that, as to the issues joined between the city of Des Moines and Julia A. Carlson, the said Julia A. Carlson is estopped from contesting the charges made and assessments levied by the city of Des Moines against her interest in said land for the improvement of said Avenue Frederick M. Hubbell, and the cross-petition of the said defendant Julia A. Carlson against the city of Des Moines is dismissed for want of equity."

From the decree rendered in favor of the plaintiffs and against the city of Des Moines and the county treasurer, they have appealed, and from the decree dismissing Julia A. Carlson's cross-petition, she has appealed.

It is the contention of the plaintiffs and cross-petitioner that the aforesaid deed executed by the Carlsons in 1911 is void, and conveyed to the city no interest in the Carlson land,  for the reason that the description therein is so vague, general, and indefinite that the land attempted to be conveyed cannot be located.

In 18 Corpus Juris 179 it is aptly stated:

"A deed, to be operative, must contain some description or designation of the land intended to be conveyed, and the want of a description of the subject-matter, so as to denote upon the instrument what it is in particular, or of a reference to something else which will render it certain, is a defect which makes the deed wholly inoperative. A conveyance is also void if the description therein is too vague and uncertain to fulfill the requirement just stated, as where the starting point of a description cannot be established."

It will be observed that the description in said deed contains no boundaries, no monuments, no directions, or other description that identifies this indefinite strip of land across a tract of 92 acres. Where did it begin? Where did it end? In what direction did it run? No one can tell. In a very early case, *Bosworth & Allen v. Farenholz,* 3 Iowa (Cole) 84, this court held that a deed purporting to convey "40 feet of Lot No. 2, in Block No. 2, in Davenport" is fatally defective in its description of the property intended to be conveyed, and does not convey any interest, and is void. Also, see *Boyd v. Ellis,* 11 Iowa 97; *Blair Town Lot and Land Co. v. Scott,* 44 Iowa 143; *Roberts v. Deeds,* 57 Iowa 320; *Minneapolis & St. L. R. R. Co. v. Incorporated Town of Britt,* 105 Iowa 198; *Bowie v. Herring,* 116 Iowa 209; *Wallace v. Weld,* 145 Iowa 710; *Crosier v. Brown,* 66 W. Va. 273 (66 S. E. 326). The city, over objection by the plaintiffs and cross-petitioner, attempted to prove by parol evidence the location of the right of way attempted to be described in the deed. We need not pause to determine the admissibility or competency of such evidence, as said oral testimony failed to establish an intent to convey the real estate where the highway is now located.

It is thus apparent that the deed, being void for uncertainty of description, is insufficient to constitute a dedication by the Carlsons of the land where the improvement is now located.

The next contention of the plaintiffs and cross-petitioner is that Hubbell and the city of Des Moines had abandoned the project, and that whatever rights, if any, were obtained by the

 aforesaid void deed had been lost by reason of the abandonment. It must be borne in mind that this deed was executed in 1911; that Hubbell abandoned the project by his aforesaid communication of August 30, 1913, and the city, by resolution, also joined in the abandonment. Here we have the affirmative acts of both Hubbell and the city, abandoning the project. The farm remained intact as a farm after the execution of the deed; the Carlsons' enjoyment and possession of the same were never disturbed until 1923; and Mrs. Carlson mortgaged the same, warranting the title thereto, in the mortgage under which plaintiffs claim. Clearly, there was an abandonment. *Robertson v. Hartenbower*, 120 Iowa 410; *McCarl v. Clarke County*, 167 Iowa 14; *Weber v. City of Iowa City*, 119 Iowa 633; *Simplot v. City of Dubuque*, 49 Iowa 630; *Larson v. Fitzgerald*, 87 Iowa 402.

It will also be observed that the aforesaid deed executed by the Carlsons attempts to convey "the right of way *for the purpose of maintaining and establishing thereon a street, boulevard, or avenue,*" etc. (The italics are ours.) It is thus apparent that the right of way was for a particular or special purpose. It is a well recognized rule of law that a grant of a right of way for a particular purpose terminates as soon as the said purpose ceases to exist or is abandoned. See *Chicago & N. W. R. Co. v. Sioux City Stockyards Co.*, 176 Iowa 659; *Skillman v. Chicago, M. & St. P. R. Co.*, 78 Iowa 404; *Dennis Long & Co. v. City of Louisville*, 98 Ky. 67 (32 S. W. 271); *Hahn v. Baker Lodge, No. 47*, 21 Ore. 30 (27 Pac. 166, 28 Am. St. 723); *Bangs v. Potter*, 135 Mass. 245; *Central Wharf & W. D. Corp. v. Proprietors of India Wharf*, 123 Mass. 567. It is thus apparent that, after the abandonment by both Hubbell and the city of Des Moines in 1913, the city could not thereafter instill the breath of life into the deed.

The record reveals no act by the Carlsons of a dedication of the land where the boulevard is located. Julia A. Carlson held the title to the land at the time of the adoption of the aforesaid resolution of necessity. No effort was made  by the city, by condemnation or otherwise, to obtain title to that portion of the Carlson land upon which the improvement is located. The action of the city was without jurisdiction, and

amounted to an appropriation of a portion of the Carlson property. The action of the city, being without jurisdiction, was void *ab initio*. The contention of the plaintiffs and the cross-petitioner is not that there was a mere irregularity in the proceedings, but strikes at the right of the city to proceed at all. It is well settled that, where the city acts without jurisdiction, as was done in this case, it cannot exercise the taxing power for the cost of the improvement. See *Bradley v. City of Centerville*, 139 Iowa 599; *Gallaher v. Garland*, 126 Iowa 206; *Manning v. City of Ames*, 192 Iowa 998; *Coggeshall v. City of Des Moines*, 78 Iowa 235; *Chicago & N. W. R. Co. v. Sedgwick*, 202 Iowa 33; *Starr v. City of Burlington*, 45 Iowa 87; *Holliday v. City of Atlanta*, 96 Ga. 377 (23 S. E. 406) ; *Spaulding v. Wesson*, 115 Cal. 441 (47 Pac. 249) ; *Wakeley v. City of Omaha*, 58 Neb. 245 (78 N. W. 511) ; *Miller v. City of Detroit*, 244 Mich. 38 (221 N. W. 292) ; *Culver v. City of Yonkers*, 80 App. Div. 309 (80 N. Y. Supp. 1034), affirmed, 180 N. Y. 524 (72 N. E. 1141). It is held in these authorities that there is no estoppel where the city acts without jurisdiction. As hereinbefore stated, there is testimony in the record that the cross-petitioner protested against the city's taking possession of her land. Much is said in the city's argument about a petition's being presented to the city council for the extension of Avenue Frederick M. Hubbell, purporting to be signed by the cross-petitioner and many others. There is not a particle of testimony in the record that the signature thereto is that of the cross-petitioner, or made with her authority or consent; and even if her signature be conceded, there is nothing in the petition which could constitute a waiver of any of her legal or equitable rights. As is well said in *Wakeley v. City of Omaha*, supra:

"It is, however, urged that appellant should not be heard to allege the above-noted lack of jurisdiction, because of certain of her own acts. These were, first, that she signed the petition for the paving of the street. But this signing was before the pavement was put down, and could have had no reference to a waiver of compliance with statutory requirements regulating the proceedings whereby the levy and assessment were to be made after final completion of the work."

In *Bradley v. City of Centerville*, supra, the city sought

to pave an alley that had been vacated apparently for the purpose of having a post-office building erected thereon, but for some reason, the building was not erected. The alley was used after the vacation the same as it had been prior thereto. It was held that it was necessary that the alley be rededicated. We there said:

"Is the plaintiff, as the owner of property sought to be subjected to special assessment for said pavement, estopped to assert its invalidity? The plea of estoppel is based solely upon the fact that, being a resident of the city, and having knowledge of the council proceedings ordering the improvement in question, he did not object or protest against it until notified of the special assessment upon his property. The question is not an open one, under the repeated decisions of this court. The council being wholly without power to order the paving of the alley at the expense of the abutting property, its proceedings for that purpose were without jurisdiction, and void *ab initio*. Under such circumstances, the property owner is not bound to stand in the way, and protest at each step, in order to successfully resist the tax."

Further quotations of a similar nature could be made from the foregoing authorities, but we deem it unnecessary.

It is apparent from the foregoing that the deed is void for uncertainty; that there had been a complete abandonment of the project and of the right of way, by both Hubbell and the city, even could it be said that the deed is not void; that there has been no act on the part of the Carlsons, or either one of them, which constitutes a dedication; that the taking of the Carlson property was without legal authority; that the act of the city in the adoption of the aforesaid resolution of necessity is not sufficient to constitute a dedication of that portion of the Carlson property lying within the confines of the street, as a street or boulevard; that the acts of the city in adopting the resolution of necessity and exercising the taxing power are void *ab initio*, for want of jurisdiction; and that the cross-petitioner, Julia A. Carlson, is not estopped from asserting the illegal acts of the city in appropriating her property and in assessing her farm for the costs of the improvement.

Under the record, the rights of the cross-petitioner, Julia A. Carlson, stand on an equal basis with those of the plaintiffs.

Because of our holding, it is unnecessary to discuss the rights of the plaintiffs as purchasers for value and without notice.

For the foregoing reasons, the case is affirmed as to the appeal of the city of Des Moines and Allen Munn, county treasurer, and is reversed on the appeal of the cross-petitioner, Julia A. Carlson.—*Affirmed in part; reversed in part.*

ALBERT, C. J., and STEVENS, MORLING, and GRIMM, JJ., concur.