CHICAGO & NORTHWESTERN RAILWAY COMPANY et al., Appellees, v. SIOUX CITY STOCKYARDS COMPANY, Appellant.

RAILROADS: Right of Way—Easement for Special Purpose—Termination. A grant of railroad right of way *for particular purposes* terminates as soon as the said purposes cease to exist or are abandoned. So held where such right of way was granted in order to enable the railroad to reach and serve a packing house and stockyards, the packing house and stockyards being later abandoned.

EASEMENT: Creation—Presumption—Railroads. A grant or gift of ground for a railway right of way is presumptively of an easement therein only.

**EASEMENT: Creation—Creation for Special Purpose—How Proved.**
3  Surrounding facts and circumstances may be sufficient to show that an easement was granted for a special purpose only. So held where a railway right of way was held to have been granted for the sole purpose of enabling the railway to reach and serve a packing house and stockyards and terminated on the abandonment thereof.

**PLEADING: Answer—Defendant Utilizing Plaintiffs' Allegation.**
4  Defendant need not allege that which is a part of his case when plaintiffs have accommodatingly alleged it for him.

**PLEADING: Issue, Proof and Variance—General Denial—Evidence**
5  **Admissible—Quieting Title.** On the issue whether an easement for a railway right of way was permanent, evidence that it was granted for a *special purpose* is admissible under a general denial.

**EASEMENT: Creation — Degree of Proof Necessary.** He who
6  alleges an oral grant of a permanent easement must establish the same by clear, definite and unequivocal testimony. So held in case of a railway right of way.

**APPEAL AND ERROR: Abstract of Record—Denial—Fullness Re-**
7  **quired—Certification of Record.** Appellees' denial of appellant's abstract which fails to point out the defect alleged to exist *as specifically as the case will permit* will be disregarded. (Rule 32.)

Salinger, J., dissents as to the application made.

PRINCIPLE APPLIED: Appellant's abstract, in an equity case, revealed (a) certificates, in the usual form, dated September 30, 1912, signed by the reporter and judge, to the effect that the transcript contained "all the evidence offered or introduced in said cause . . . upon the trial thereof;" (b) that said transcript was filed on November 13, 1912; and (c) that the decree recited that the matter came on for hearing on December 26, 1912, and "thereupon the plaintiff and defendant introduced their evidence," etc.

Appellee filed a denial. His denial was to the effect that appellant's abstract and his (appellee's) amendment did not contain all the evidence *because evidence was introduced on December 26th.* He alleged that *this* latter evidence (without identifying it or in any further way pointing it out) was not made of record. He also alleged that abstract contained no evidence taken later than said September 30th.

Appellant then amended his abstract and showed that the evidence was closed on September 7, 1912, and that the court then made this order, to wit: "Both parties rest. Testimony closed;" and alleged that this order had never been set aside and no additional evidence was ever offered. *Held,* appellee's denial was not as specific *as the circumstances permitted and demanded,* and would

not overcome the presumption arising from the record, as shown by appellant's abstract and amendment, that the abstract *did* contain all the evidence.

**APPEAL AND ERROR:** Record — Certification — When Required.
8  Appellant is under no obligation to resort to a certification of the record unless appellee's denial of the appellant's abstract is as specific as to the defect complained of as the case will permit. (Sec. 4122, Code, 1897.)

SALINGER, J., dissents as to the application made.

**APPEAL AND ERROR:** Abstract of Record—Denial—Amendment
9  —Construction. An amendment by appellant to his own abstract, correcting the record as to proceedings prior to a certain date, cannot be construed as being responsive to a denial by appellee as to the correctness of the abstract as to proceedings subsequent to said date.

**APPEAL AND ERROR:** Transcript—Official Certification—Inconsist-
10  ent Recitals in Decree—Construction. Recitals in a decree, inconsistent or apparently contradictory with the official certification of the transcript by the reporter and judge, will, if possible, be so construed as to harmonize with the latter.

PRINCIPLE APPLIED: A transcript was duly certified by the reporter and judge as containing *all* the evidence. Such transcript was filed on November 13th following, presumably for the purpose of aiding the judge in reaching a decision. Decree was rendered December 26th following, and recited that on said date "the plaintiff and defendant introduced their evidence," etc. *Held*, the recital in the decree had reference to the filing of the transcript on November 13th.

**APPEAL AND ERROR:** Transcript—Official Certification—Inconsist-
11  ent Recital in Decree—Effect. A *naked* assertion by counsel that evidence was introduced on the date of the decree, *even when aided by a recital in the decree to that effect*, will not overcome the official certificate of the reporter and the judge that the transcript contains *all* the evidence. (Secs. 3675, 4118, Code, 1897.)

SALINGER, J., dissents.

*Appeal from Woodbury District Court.*—JOHN F. OLIVER, Judge.

THURSDAY, JUNE 29, 1916.

SUIT to quiet title to right of way resulted in a decree as prayed. The defendant appeals.—*Reversed.*

*Milchrist & Scott,* for appellant.

*W. H. Farnsworth, J. C. Cook* and *James C. Davis,* for appellees.

LADD, J.—I. All parties hereto are corporations, each of plaintiffs operating a railway entering into or passing through Sioux City, and the defendant conducting the stockyards at that place. In 1885 or 1886, James E. Booge and four others organized the Booge Packing Company, and acquired the property in controversy, in connection with Block 17 of the annexed plat. Booge, in behalf of this company, requested the Sioux City & Pacific Railway Company (to whose property the Chicago & Northwestern Railway Company succeeded in 1901) and plaintiffs, other than the Willmar & Sioux Falls Railway Company, to construct railway tracks over and across Lots 7, 8 and 9 in Block 13; Lot 12 in Block 16; Lots 3, 4, 5, 8 and 9 in Block 17; Lots 5 and 8 in Block 18; Lot 4 in Block 19; Lots 9, 5 and 11 in Block 19—all in Floyd City, an addition to Sioux City. The petition alleged that an agreement with said railway companies then was entered into, whereby the Booge Packing Company undertook to dedicate and grant to the railway companies, their successors and assigns, an easement to a strip of ground 16 feet in width across said lots, for the purpose of constructing railway tracks in order to serve the packing house and its business and the stockyards of the Union Stockyards Company, and that the railway companies accepted said dedication and easement, went into actual possession of said strip and constructed permanent embankments and railway tracks thereon, extending the entire length thereof, at a large expense, and, in pursuance of said agreement, have operated and maintained the same continuously up to the present time. The Willmar & Sioux Falls Railway Company subsequently acquired a one-fifth interest in anything acquired by the other companies. The plaintiffs say that they have been in adverse possession of said strip of land for more than

20 years; that the defendant is the successor of the Union Stockyards Company and claims some interest therein; but plaintiffs aver that defendant has acquiesced in plaintiff's maintenance of the tracks, and that whatever interest it has is subject to their claim thereto, and they pray that title to said strip be quieted in them as against any adverse claim on the part of defendant. For answer, the defendant admitted that it claimed an interest in the premises, but denied all other allegations save the organization of the companies.

On hearing, the trial court concluded that plaintiffs were entitled to the relief prayed, but whether because of adverse possession or the acquiescence of defendant in their alleged claim of ownership does not appear. The burden was on plaintiff to prove that it had acquired such title to the strip of ground in controversy as that it was entitled to have the relief prayed. Whether defendant's claim thereto be weak or strong is quite immaterial, save as this may bear on the inquiry as to whether title is in plaintiffs. The main facts are undisputed. The Booge Packing Company was organized in 1884 or 1885 by James E. Booge and four others. Its plant was located on Block 17 of the annexed plat, and it acquired the lots over which the right of way in controversy is claimed. Booge was president and general manager of the company. The Union Stockyards Company had been organized for some time, and its yards were located east of Prospect Street. The railroads of plaintiffs, other than the Sioux City & Pacific Railway Company, connected with the stockyards track at or near the corner of First Street and Chambers Street. The Sioux City & Pacific Railway Company, whose successor is the Chicago & Northwestern Railway Company, constructed two tracks from near the corner of Dace and Lafayette Streets in a southeasterly direction to Chambers Street, to serve the packing house. In 1886 or 1887, Booge, as representative of the packing company, negotiated with the rep-

1. RAILROADS: right of way: easement for special purpose: termination.

resentative of the several railway companies for the extension of these lines so as to connect with the stockyards tracks on Prospect Street. This resulted in an agreement which was to be reduced to writing by the late J. H. Swan, attorney for one of the companies, and signed; but this was never done. Booge testified that the packing company was to give the right of way over the lots from Dace Street to Prospect Street in consideration of the extension of the tracks; that the tracks were laid and used by the railroad companies over which to haul the products of the packing house and hogs to it; that all companies were to make use of the tracks, but he did not know that obtaining stock from the yards was mentioned, but that was a part of his purpose; that the tracks were not used up to 1892, save to serve the packing company's plant. Towsley, the local superintendent of the Chicago & Northwestern Railway Company, testified, but appears to have known little personally concerning that of which he spoke. Underwood, division superintendent of the Chicago, Milwaukee & St. Paul Railway Company, confirmed Booge's testimony and swore that the railroad companies had "used—jointly operated—each company operates its own trains over them (tracks). . . . Up to five years ago, they were operating the tracks." Spencer, division superintendent of the Chicago, St. Paul, M. & O. Railway Company, testified that the packing company and the Union Stockyards Company were to furnish the right of way and the companies were to furnish the trackage; that Col. Swan was to prepare the contract; that the tracks were to be owned by the roads jointly and were operated by them until 1900. Haakinson, manager of the stockyards company, stated that the packing company was to furnish the right of way; that its duration was to be inserted in the contract to be drawn by Swan; that he and Booge were to procure ordinances from the city, permitting construction of the track in the streets and alleys; that the railway companies were to haul no live stock over the tracks except from the stockyards; that the railway companies did

the switching on these tracks for about two years, each furnishing a crew for three months' rotation; that then the stockyards company procured an engine and did all the hauling on these and the stockyards' tracks in pursuance of a written contract referred to later; that the yards of the Union Stockyards Company were flooded in 1890 and abandoned as stockyards in 1892. Eaton, president and general manager of the Sioux City Stockyards Company, testified that the Sioux City Stockyards Company was organized in 1894 and took over the property of the Union Stockyards Company in 1895; that it succeeded also to the ownership of the lots in controversy; that it established its yards south of the plat on which it laid tracks; that it carried out the agreement as to hauling on the tracks of its assignor, the Union Stockyards Company, until 1900, when it arranged with the Union Terminal Company to do the switching, which company did this for three years, owing to objection by the railway companies when the Sioux City Stockyards Company did the hauling again, and so did until 1907. The stockyards companies and Union Terminal Company had maintained the tracks for five or six years, and at about this time, the Chicago & Northwestern Railway Company made some repairs on the west part of the two tracks, but none were made by any company east of Chambers Street; that, in 1907, owing to certain rules of the Interstate Railroad Commission, the Sioux City Terminal was organized by the Sioux City Stockyards Company, and the switching has been done by that company since over these and other tracks in the stockyards district connecting the plaintiff railways with the stockyards, and through this with packing houses; that the terminal and stockyards companies have operated these tracks for the last 17 years; that, during this time, aside from storing and receiving some cars on the west end of tracks by the Chicago & Northwestern Railway Company, the repairs mentioned, and running over the lines once or twice by the several railway companies, in order to advise the defendant of their claims, the plaintiffs have had nothing

to do with these tracks during that time; that the only possible use of these tracks, save in connection with the stockyards system, was in the storage of cars by the Chicago & Northwestern Railway Company; that they do not now reach the packing houses or stockyards; that the tracks are insufficient to handle the business coming to these, and a new system of tracks should be inaugurated; that these tracks reach the packing houses only by connecting with the stockyards tracks, and for these the particular tracks in controversy are used only for a short distance; that the Booge Packing Company ceased to operate its plant in 1895; that the tracks in controversy could be used by plaintiffs in no other way than for the storage of cars by the Chicago & Northwestern Railway Company, and the stockyards company owns the tracks connecting therewith. Ordinances were procured as proposed. There was no evidence tending to show what width the proposed right of way should be, nor was the manner of conveying a right of way spoken of, nor does the record contain anything other than mentioned bearing on the extent of plaintiff's interest in said strip of land, unless it be certain ordinances procured as proposed through Booge and Haakinson, and a contract under which the tracks in controversy have been used.

The ordinances give the railroad companies the right to lay their tracks on the streets and alleys from Dace Street to Prospect Street. The contract bears date June 18, 1890, and was signed by the Union Stockyards Company and by the Chicago, St. Paul, M. & O. Railway Company only. The evidence is undisputed, however, that the tracks have been used under this contract since, the only change being that charges for switching have been increased. It recites the location of the tracks to the yards of the Union Stockyards Company and the packing house of James E. Booge & Sons; that the railway companies "either own or have permission to operate and use lines of railroad connecting their several systems of railway in Sioux City with said tracks" of the stockyards com-

pany and with the packing house; that it is deemed for the best interests of all parties that the stockyards company "have the exclusive handling and operation of said tracks, and it was mutually agreed that during 10 years the railway companies shall deliver to the stockyards company at the transfer track on First Street, all cars loaded with different materials destined for the yards or persons connected therewith or to the packing house, and that the stockyards company shall haul said cars to their destination and shall haul cars both empty and loaded received at the packing house or stockyards to the several companies for transportation, and for the purpose of carrying out this agreement, the said parties of the second part hereby lease to the party of the first part for the period of this agreement hereinafter mentioned, the said tracks on First Street from the west side of Chambers Street in Central Sioux City to the connection with the tracks of said first party (stockyards) and the tracks leading to the packing house of the said James E. Booge & Sons; and during the continuance of this agreement, said first party is to have exclusive handling and operation of all cars between the said transfer track and the west side of said Chambers Street and said yards or packing house or other points on said tracks hereby leased or shipped therefrom."

The stockyards company undertook to furnish all necessary engines and motor power and all labor necessary to handle the cars, and was to receive $1 per car for its services. Such is the record before us, stated somewhat in detail owing to our inability to reach the same decision as did the district court. Even in this contract, ownership of the railway companies is not asserted. It merely recites that they "either own or have permission to operate and use." Nor is anything to be found in the record binding defendant to its performance. By a sort of common consent, it and the terminal companies did the switching according to its terms. The railway companies were in actual possession only about two years when such possession was transferred under the

terms of this lease. If they pretended to own the fee to the strip - occupied by the tracks, there was no evidence of such a claim.

In the absence of some showing to the contrary, a grant or gift of ground for right of way is presumed to be of an easement therein only. *Brown v. Young*, 69 Iowa 625; *Hileman v. Chicago, G. W. R. Co.*, 113 Iowa 591.

**2. EASEMENT:** creation: presumption: railroads. And a grant of an easement for particular purposes having been made, the right thereto terminates as soon as the purposes for which granted cease to exist or are abandoned or are impossible. *National Guaranteed Manure Co. v. Donald*, 4 H. & N. 8, 16; *Dennis Long & Co. v. City of Louisville*, 98 Ky. 67 (32 S. W. 271); *Hahn v. Baker Lodge*, 21 Ore. 30 (28 Am. St. 723, 13 L. R. A. 158); *Bangs v. Potter*, 135 Mass. 245; *Central Wharf, etc., Corp. v. Proprietors of India Wharf*, 123 Mass. 567; 14 Cyc. 1194.

If, then, the right of way was granted for the specified purposes of being used by the railway companies to haul or have hauled cars to and from the plant of the Booge Packing Company and the yards of the Union Stockyards Company, it must have terminated when the plant and yards were abandoned. The petition alleges a grant for particular purposes; for therein it is said that it was of "an easement in and to a strip of ground 16 feet in width over and across said lots and all of them for the purpose of constructing and maintaining railroad tracks for the purpose of serving said packing company and its business, the general public having business therewith, and the stockyards, then known as the Union Stockyards, and then owning and operating a stockyards plant adjacent to said lots and on the east side thereof, and said railroad companies then accepted said dedication and easement so agreed upon and granted . . . . and went into actual possession of said strip of ground so dedicated and granted." The evidence heretofore

**3. EASEMENT:** creation: creation for special purpose: how proved.

recited establishes the grant precisely as so alleged, and that neither the plant of the packing company nor the stockyards is longer operated. No other purpose appears to have been contemplated. Booge testified that these purposes were what induced him to enter into the arrangement. Haakinson swore that such was the purpose had in the construction of the tracks. While none of the representatives of plaintiffs testified that these were the purposes to be served, the circumstances permit of no other inference. The tracks were to connect these plants with the railway systems and were not intended as parts of their through lines of railway. The oral agreement was never reduced to writing, though this was to be done by Swan. The matter of a deed was not mentioned, though the exaction thereof would have been likely, had a permanent easement been contemplated. The cost of laying these particular tracks does not appear. The width of the right of way was not suggested. At the time, but two industries were interested; i. e., the packing company and the stockyards company. These were to be tracks for the joint use of four or five railway companies. There was no possibility of such joint use except in the service of these two companies. None of the companies except the Chicago & Northwestern Railway Company could serve any industry over these tracks, and the Chicago & Northwestern Railway Company's use is limited to making use of them only in serving the defendant over connecting tracks and for storing cars at the west end. Even this storage seems to be in transferring to and from the Sioux City Terminal Company, for it to haul to and from the defendant's yards or the packing houses. Aside from this use by the Chicago & Northwestern Railway Company, the duration of which does not appear, none of the plaintiffs have been in possession since about two years after the tracks were laid. Changing crews who did the switching every three months proved impracticable, and, as soon as the stockyards company procured an engine, it took possession of the track, and this

was never resumed by the railway companies save as stated concerning the Chicago & Northwestern Railway Company. That an easement has been granted for particular purposes may be inferred from facts and circumstances proved, quite as readily as from direct evidence, is apparent, and we are of opinion that no other conclusion can well be drawn from the record before us. Appellees contend, however, that, to be available, the issue as to whether the use of the right of way was to be for particular purposes should have been raised by the answer. If this were so, the point would not be well taken, for plaintiffs so alleged in their petition. Having so done, there was no occasion for defendant to plead such limitation. In any event, the burden is on plaintiffs to prove the gift of a permanent easement, and, if the gift was of less than that, they have failed, and the evidence was pertinent to the issues as raised by a general denial. We have discovered no evidence of any assertion of more than a gift or grant of the right of way for particular purposes, save that by counsel for plaintiffs.

*4. PLEADING: answer: defendant utilizing plaintiffs' allegation.*

*5. PLEADING: issue, proof and variance: general denial: evidence admissible: quieting title.*

After the Union Stockyards Company had been in possession of the tracks and doing the switching some time, a written contract, specifying the conditions under which this should be done and its charges therefor, was prepared and signed by it and one of the railway companies, but not the others. Therein, it was not pretended that the railway companies owned the right of way; but, even if it had been so stated, contracting with reference thereto was not inconsistent with the right of way's being granted for particular purposes. Thereafter, the defendant and the terminal companies by common consent seem to have operated in accordance with the provisions of this writing, save as to charges, but this involved no claim of right or title on the part of the railway companies, nor concession thereof on the part of defendant. The latter had acquired title to the lots on which

the tracks were laid, and the railway companies had not parted with the rails laid thereon, even though the purposes for which laid had ceased, and both were interested in the switching of cars to and from the defendant's yards and the packing houses. The stockyards and terminal companies, and not the railway companies, save the Chicago & Northwestern Railway Company for a period not shown, in storing its cars on the west end and in repairing that portion of the tracks, were in possession of the right of way. Such possession was not in subordination to any claim that plaintiffs may have had.

The burden of proof was on plaintiffs to establish the alleged oral gift or grant of a permanent easement by clear, definite and unequivocal testimony. *Truman v. Truman*, 79 Iowa 506, 509; *Williamson v. Williamson*, 4 Iowa 279, 281. This, as seen, they have failed to do, but, on the contrary, have shown an easement limited to particular purposes which have ceased. There is no proof of, the assertion of any other claim of right or title, nor, that the plaintiffs, or any of them except the Chicago & Northwestern Railway Company, have been in possession since 1889, and the temporary possession of the Chicago & Northwestern Railway Company has not been exclusive, and the duration thereof has not been shown.

**6. EASEMENT: creation: degree of proof necessary.**

We need only add that neither the gift nor grant of a permanent right of way nor adverse possession was proved, and therefore the trial court erred in not dismissing the petition.

II. Appellees challenge the jurisdiction of this court on the ground that evidence was received December 26, 1912, and not preserved or made of record in any manner. They also move that, as "the evidence offered and introduced on the trial below is not before this court and because the same has not been preserved as by law

**7. APPEAL AND ERROR: abstract of record: denial: fullness required: certification of record.**

provided,'' the decree of the district court be affirmed. The decree entered recited:

''Now at this time, December 26, 1912, it being one of the regular days of the November, 1912, term of court, this cause came on for hearing, the plaintiffs appearing by their counsel Shull, Farnsworth, Sammis & Stilwill, and the defendant, the Sioux City Stockyards Company, appearing by its attorneys, Milchrist & Scott, and thereupon, the plaintiffs and defendant introduced their evidence on the issues joined between the parties, and the court having heard the arguments of counsel and being fully advised in the premises, finds:''

Then followed the findings and judgment. The certificates of trial judge and reporter in usual form are attached to the transcript of the evidence, asserting that it contains

8. APPEAL AND ERROR: record: certification: when required.

"all the evidence offered or introduced in said cause by the respective parties upon the trial thereof," both bearing date September 30, 1912. This transcript was filed November 13th following. Appellees deny that appellant's abstract alone, or with appellees' additional abstract, contains all the material evidence offered or introduced, in that evidence was introduced on December 26, 1912, and such evidence is not set out nor any evidence adduced after September 30, 1912, and they also deny that such evidence was preserved as by law provided. Thereupon, appellant amended its abstract by asserting that, at the close of the evidence on September 7, 1912, the following order was entered of record: "Both parties rest. Testimony closed"—and that thereafter no application was made to set same aside and no additional evidence was offered by either party. In response to this, appellees say that appellant's amendment is but a denial of appellees' additional abstract, and repeat in substance the contents of such additional abstract. Rule 32 exacts that:

''Every denial shall point out as specifically as the case

will permit the defects alleged to exist in the abstract.  A denial by appellee shall be taken as true unless the appellant sustains his abstract by a certification of the record."

The denial of appellees is that the abstract contains the evidence which they assert was received December 26, 1912, and they deny that such evidence was preserved as provided by law.  The certification, if required, must necessarily be sufficiently specific, and no more so than to cover the denial.  The latter did not relate to proceedings prior to December 26, 1912, and therefore an amendment to the abstract, setting out the record prior to that day, was not sustaining the abstract in the particulars denied by appellees. The mere fact that an inference from the record prior to that day might contradict, or tend to contradict, such denial, would not render its certification necessary to obviate taking the denial as true.  Otherwise, the advantage of specific denials and certifications specifically covering them would be lost.  The only object of certification is to settle the specific dispute raised by a denial; and when this is accomplished by the undisputed record, there is no occasion for certification.  The amendment to the appellant's abstract, then, was not a denial of appellees' additional abstract, save as it asserted that "no additional evidence was offered by either party."  Let us ascertain from the record, then, whether all the evidence offered or introduced is contained in the record before us; for, of course, it must have been extended in the transcript certified by the trial judge and official reporter and made a part of the record. Section 3652, Code Supp., 1913; *Richardson v. Fitzgerald,* 132 Iowa 253.  Appellees do not question that the cause came on for trial September 7, 1912, nor that the evidence contained in the abstract was introduced on that day.  Nor is the entry denied of the order reciting that "both parties rest.

9. APPEAL AND ERROR: abstract of record: denial: amendment: construction.

10. APPEAL AND ERROR: transcript: official certification: inconsistent recitals in decree: construction.

Testimony closed." To contradict, or at least modify it,
appellees rely somewhat on the recitals of the decree. Such
entries usually are prepared by counsel and presented to the
judge for signature, and, notwithstanding statements appar-
ently to the contrary, the cause does not come on for hearing
at that time, nor are there appearances then or the introduc-
tion of evidence. Such recitals always are to be read in the
light of what has occurred in the case,—the entire record;
and when this is done, it becomes manifest, as it is in this
case, that, though the hearing may have occupied several days
and arguments previously been submitted and the cause taken
under advisement, decrees are prepared as though everything
connected with the hearing occurred on the day the decree
is entered. This custom may have had its source in that
which formerly obtained in entering all judgments as of the
first day of the term. Though the decree proceeds as though
the case were heard entirely on the day of its date, the rec-
ord shows conclusively that this happened, in part at least,
September 7th previous, and that the testimony then was
closed. If the trial occurred as the decree recites, then there
could not have been a hearing at the earlier date. That there
had been such hearing is not questioned; and the decree, in
reciting that "plaintiffs and defendant introduced their evi-
dence on the issues joined between the parties," must have
referred to the transcript of the evidence filed November 12,
1912, presumably for the use of the judge in reaching a deci-
sion. This conclusion harmonizes the record by giving effect
to all of its recitals, and we are inclined to so construe the
decree. The recital concerning the introduction of evidence
was not necessary to its validity, nor an essential part of it
(Section 3769, Code, 1897; *Judge v. Powers,* 156 Iowa 251);
and, if inconsistent with the certificates of trial judge and
reporter, must give way to these, the sole function of which
is the certification of the evidence adduced at the trial.

But this does not fully meet the denial, which asserts,
in substance, that material evidence was offered or introduced

December 26, 1912, which they deny was made of record or preserved as by law provided, or included in

11. APPEAL AND ERROR: transcript: official certification: inconsistent recital in decree: effect.

the abstract. There is room for suspicion that this assertion was inspired by the language of the decree, rather than any real diminution of the record. If so, it is a perversion of the rules, the design of which is to aid, not obstruct, the presentation of the true record to this court. In any event, the naked assertion of counsel that evidence of which no record was made was offered or introduced on the day decree was entered will not overcome the record showing the hearing to have been had some time before, that the testimony had closed, and the certificates of the trial judge and reporter, even though dated prior to the date of the decree, that the transcript of the evidence contained "all the evidence offered or introduced in said cause by the respective parties on the trial thereof." If the evidence were not made of record, how might such a denial be met by a certification of the record? Of course, a case might be opened, even after both parties had rested, but this is not usual, and it is not exacting too much of appellee, when this is claimed, that he set up enough of the subsequent proceedings to overcome the presumption obtaining in favor of the record and certificates ordinarily regarded as conclusive. Otherwise, the certainty of the recognized method of identifying the evidence must give way to the art of interposing frivolous denials; and the record, no matter how conclusively authenticated, be treated as open to contradiction by the mere denial of counsel. We are not ready to lend our approval to any such practice, but hold, as stated, that appellees' denial, standing alone, was not enough to overcome the record as made, and it is disregarded.—*Reversed.*

EVANS, C. J., WEAVER, GAYNOR and PRESTON, JJ., concur.

DEEMER, J., agrees to conclusion of majority.

Salinger, J. (dissenting).—Owing, no doubt, to my limitations, the majority opinion on the practice point seems confusing and largely irrelevant, and, though I have given it earnest study, it makes nothing clear to me, except that it would seem to repudiate the rules of this court. It strikes me that the decision would be different if it were not thought that there should be a reversal. Being temperamentally unable to play fast and loose with court rules or decisions— to adhere or depart according to what party has, in my judgment, the "merits" of the case—being indifferent to what is the case of one who does not have it in court, I am constrained to dissent.

Appellant asserts in its abstract that we have all the testimony and that it was made of record by certificate of date September 30, 1912. To this, appellee replied, by amendment, that, on the 26th of December, 1912, both parties being present, "evidence was introduced by both parties and received and heard by the court." In the same paper, and immediately following this amendment to abstract, there is this denial of appellant's abstract:

"Appellees deny that appellant's abstract contains a full record of the trial of the cause below, and deny that a full record of said trial is exhibited in this court by said abstract, or by said abstract taken with appellees' additional abstract in this: Evidence was introduced by the parties, and heard by the court on the 26th day of December, A. D. 1912. (Here follow some references which will be noted later.) And such abstract nowhere sets forth the evidence so taken, nor any evidence taken later than the 30th of September, A. D. 1912. Wherefore, appellees deny that all the material evidence offered, or offered and introduced on the trial below, has been made of record and preserved as by law provided, and deny that the appellant's abstract, either alone or taken with appellees' additional abstract, contain all the evidence or all the material evidence offered, or offered and introduced, on the trial of this cause in the court below."

Immediately following is a motion to affirm, which makes part thereof the foregoing additional abstract and denial, and which moves the court to affirm the decree, "for the reason that the evidence offered and introduced on the trial below is not before this court, and because the same has not been preserved as by law provided."

In a separate paper, the jurisdiction here was objected to in these terms:

"Appellant's abstract in said cause shows (making the same references to abstract) that evidence in said cause was introduced on the 26th day of December, 1912, and said abstract fails to show or recite that the evidence received on said day was ever preserved or made of record in any manner."

In *Carlton v. Brock,* 91 Iowa, at 711, a trial *de novo* is denied because appellant has failed to meet the following attack upon his abstract. It "does not contain all of the pleadings nor claim to be a full or correct abstract of the claim, or of the evidence or record of the case; that the abstract does not in fact contain all of the evidence; that the evidence has never been preserved or certified by certificate of the judge or otherwise." In other words, we hold that the denial quoted is sufficient to put the appellant to proof. It is not claimed that the denial here is not specific enough, and the *Carlton* case holds the attack by appellee sufficiently specific. This attack presents: (1) that evidence in the cause was taken as late as December 26th; (2) that the abstract shows on its face that no evidence taken later than September 30th was ever preserved as provided by law, or made of record in any manner; and (3) that therefore we do not have before us a proper record of all of the evidence taken in the cause.

One of the parenthetical references heretofore referred to is found in said denial of abstract, and turns me to page 60 of the abstract. I there find, of date September 30, 1912, a certification made by trial judge and reporter to the effect

that a transcript certified to contains all the evidence. I find no other certificate in the abstract, nor is any other in any way claimed to exist. This demonstrates, affirmatively, that no evidence taken subsequent to September 30, 1912, was ever competently preserved. If, then, we assume that the denials need proof, we have it proved that, if evidence was taken later than September 30th, it was not preserved. There is no room for further proof, except on the question of whether any testimony *was* taken later than September 30th. Recurring again to said references, I am turned to page 61 of the abstract, whereon I find in the decree there entered the following recitals:

"Now, at this time, December 26, 1912, it being one of the regular days of the November, 1912, term of court, this cause came on for hearing, the plaintiffs appearing by their counsel . . . and the company appearing by its attorneys . . . and thereupon the plaintiffs and defendant introduced their evidence on the issues joined between the parties, and the court having heard the arguments of counsel, and being fully advised in the premises, finds:"

As I hope presently to demonstrate, under the rules and our cases, the appellee needed no proof. But, assuming that it did, then, if what I have set forth be all, its claim that evidence was taken later than September 30, 1912, and that none was certified, except such as was introduced prior to September 30th, is affirmatively sustained by the record. This being the situation, it would seem that, unless the majority has changed them, the plain provisions of our rules compelled appellant to show by certification, if it could, either that no testimony was taken after September 30th, or that any that was taken subsequently was not material, or that, if taken and material, it was duly made of record. I am unable to give the rule any other meaning or effect. There having been a denial by appellee, it is to be taken as true "unless the appellant sustains his abstract by a certification of the record." And "a denial by the appellant of such

additional abstract, if not confessed, will be disregarded unless sustained by a certification of the record." Rule 32. The appellant never obtained any certification. What it did do was to meet this denial by a statement found in a paper entitled Appellants' Amendment to Abstract, that:

"At the close of the evidence that was offered and introduced in said case on the 7th of September, 1912, the court made the following order, which was duly entered of record, to wit: 'Both parties rest. Testimony closed.' That after the making of the above order no application was made to set same aside, and no additional evidence was offered by either party."

This amendment on part of the appellant is merely an inferential denial of appellees' additional abstract, its denial, and its motion. Except for the majority opinion, it would seem that, if an appellee asserts that evidence was taken on a given day, and that the same was not preserved (and especially if he makes prima-facie proof of these assertions), a printed amendment prepared by the appellant, declaring that the testimony was ordered closed on an earlier day, and no other was ever thereafter taken, is a statement amounting to a denial, and asserts, in effect, that all the testimony taken was preserved because it was all taken prior to a given date, and was certified to properly, and that no evidence was taken on the later date, as the appellee asserts. If such denial by appellant's print suffices, then the words of the rule that when there is an additional abstract it shall be taken to be true, unless a certification is presented, and that a denial of the additional abstract, if not confessed, will be disregarded unless sustained by such certification, has no longer any meaning or effect. And so of our decisions. And the denial by the appellant was not confessed. For, after it was made, appellee filed a paper insisting that appellant's so-called amendment to abstract is merely a denial of appellee's additional abstract; that, if the court is inclined to attach any efficacy to it, appellee denies again and asserts again as it

did originally. We affirm, in *Foley v. Cudahy*, 119 Iowa, at 246, that a denial of an amended abstract, when not confessed, will be disregarded when not sustained by a certification. In *Kitzman v. Kitzman*, 115 Iowa, at 228, 229, the appellant's abstract set out very briefly the testimony of three witnesses and claimed that that was all the evidence. Later, appellant filed an amendment, setting out, briefly, the testimony of two other witnesses, without stating that the two abstracts together contained all the evidence. Appellee filed an additional abstract "alleging that 18 witnesses testified upon the trial, whose testimony is not shown in the transcript, and that the witnesses whose testimony is set out were not the only witnesses who testified with reference to the issue as between the parties to this appeal." We held that, under the rules, it thereupon became necessary "for appellant to sustain her abstract by certification of the record." In *Culbertson v. Salinger*, November 16, 1909 (not officially reported), the original abstract of the appellant recited that it contained the minutes taken by "B. I. Turner, official shorthand reporter, etc., and that said report was duly certified as required by law." In an additional abstract, appellee denied that any certificate of the reporter or trial judge was ever attached to the reporter's report of the trial in shorthand, and asserted that the abstract did not contain the record. The appellant filed an amendment to abstract, asserting that a certificate found therein, without caption, was a true copy of that of the judge and the reporter said to be attached to the shorthand notes, and that a certificate of the reporter attached to the transcript in usual form certified that it was a correct copy. Overlooking this additional abstract of appellee obtained him a rehearing. One of the points squarely made in the petition for rehearing is that, upon the denial by appellee, no new printing or amendments on part of the appellant would serve, and that certification alone would meet the situation. We say:

"But this amendment (of appellant) did not overcome

the denial in appellee's additional abstract that not any cer-
tificate of the reporter or trial judge was ever attached to
the reporter's report of the trial in shorthand, and asserting
that the abstract did not contain the record. Rule 32 of this
court provides that 'a denial by appellee shall be taken as
true unless the appellant sustains his abstract by a certifica-
tion of the record.' And a denial by the appellant of the
contents of the appellee's additional abstract must 'be dis-
regarded unless sustained by a certification of the record.' ''

More, a certification of the record was actually applied
for and ordered, but the appellant failed because the certifi-
cation returned was insufficient. Since these denials of appel-
lee's were sufficiently specific, then the only thing that appel-
lant could do, to save being denied relief *de novo* because all
the evidence was not here, was to obtain a certification. All
he did was to deny appellee's amendment by an appellant's
amendment. That is the working of an endless chain. If
appellee denied appellant's amendment, appellant can once
more amend. The purpose of the rule is to end the dispute
when the appellee challenges, by requiring the appellant to
settle the dispute at once by producing the record. In the
light of these interpretations and applications of the rule,
no laboring with words changes that this stands out: a
specific denial is made by appellees; the rule says it is taken
to be true unless appellant files a certification; he has not
filed one, yet the denial is not taken to be true.

II. Little, if any, regard has thus far been had for the
arguments of the majority. I am unfortunate in being unable
to understand how they militate against that which I have
said. The opinion asks:

''If the evidence were not made of record, how might
such a denial be met by a certification of the record?''

The inquiry is irrelevant. If the evidence was not made
of record, a denial asserting that it was not made of record,
of course, could not be met by a certification of the record;
and there should be no attempt to meet it. If it is true that

the evidence was not made of record, then we cannot try the appeal *de novo*, and one who has failed to make his evidence of record is not helped because it is impossible by certification to overcome a just claim that there is nothing to certify. Though irrelevant, this makes plain that the opinion went off on a realization that the appellant might find it difficult to meet the denial by appellee competently. It overlooks that it must be just as hard for appellee to prove its denial, and that, though proof is equally difficult for each of the parties, the rules settle who has the burden. The rules put the burden on appellant, for the reason (perhaps there are other reasons) that, if he is unable to show competently what is all the evidence which the trial judge heard, there is, in contemplation of law, no harm done; because it is always presumed that, if we did have all, we should find that the judgment is right. Disregarding both the letter and spirit of the rule, the majority makes the rule read: A denial by appellee shall be taken to be true unless appellant is unable or finds it difficult to present a certification.

## 2.

As to the statement, "Appellees do not question that the cause came on for trial September 7, 1912, nor that the evidence contained in the abstract was introduced on that day; nor is the entry denied of the order reciting that 'both parties rest, testimony closed,'" I am unable to grasp its applicability or to accede to its correctness or materiality, in some parts. Suppose appellees do not question that the cause came on for trial September 7th, nor question that everything contained in the abstract was introduced on that day: the fact that the cause came on for trial then, and that all the evidence found in the abstract was introduced then, certainly does not even tend to disprove that evidence was introduced later than September 7th, and not preserved, and as to the soundness of the statement—it does seem to me that, when

appellee asserted that testimony was taken on December 26th, it denied both that the case was closed on September 7th, or if not that, that it asserted positively that it didn't stay closed.

3.

When a claim made in an amendment by appellant is that the court below made an order on September 7th, that the testimony is closed and the parties have rested, and there is added the statement that no additional testimony was thereafter taken, a rejoinder by the appellee that testimony was taken in the cause on December 26th is no more a "mere denial" or a frivolous assertion, or contrary to presumptions conclusive or otherwise indulged from the record, than is the assertion which is thus met. Even if the rules did not define who had the burden of proving assertions, this particular assertion made by an appellant is no holier, weightier or less subversive of the conclusiveness of records and of fair appellate practice than is the counter-assertion that the testimony was in fact not closed on September 7th, and that, in fact, testimony was taken on December 26th.

4.

This is said:

"In any event, the naked assertion of counsel that evidence of which no record was made was offered or introduced on the day decree was entered will not overcome the record showing the hearing to have been had some time before, that the testimony had closed, and the certificate of the trial judge and reporter, even though dated prior to the date of the decree, that the transcript of the evidence contained 'all the evidence offered or introduced in said cause by the respective parties on the trial thereof.' "

I am equally unable to grasp the force of this statement: Suppose there is a record showing that hearing was had on September 7th; that the testimony was then closed. Suppose

the certificate of the trial judge and reporter, dated September 30th, does say that the transcript of the evidence then certified contains all the evidence offered or introduced. That is but a statement that it contains all the evidence offered or introduced up to then. How does that make it true that "in any event, the naked assertion of counsel that evidence of which no record was made was offered or introduced on the day decree was entered (December 26th) will not overcome the record?"

In this case, the "record" shows nothing. The majority opinion constantly assumes that we have *that* "record" before us, which is the only record after a conflict in the abstracts. It constantly persists in treating the printing by the appellant as a record, and the printing by the appellee as an assertion. Of course, if there had been a certification, and it had thus been made to appear that both parties rested on September 7th, that the testimony was then closed, and that no other testimony was thereafter taken, it would overcome the assertion of the appellee that testimony was taken on December 26th, and it would overcome the assertion that additional testimony was not duly made of record, by establishing that there was no additional testimony to make of record. But that is not the situation. It is the *abstract of appellant* which declares that, on September 30th, a certificate was made that a transcript (and, therefore, the abstract) exhibited all the evidence taken when the certificate was made. It appears only from *another abstract of the appellant* that the taking of testimony was closed on September 7th, and that none was thereafter taken. The statement in the abstract of appellee, there being no certification, is not "the naked assertion of counsel that evidence of which no record was made was offered or introduced on the day decree was entered." It is, on the contrary, a recital which put the burden upon the appellant to show by the record, and not by a repetition of assertion in print, that no evidence was taken on the day decree was entered, or that, if then taken, it was duly made

of record. The recital in the abstract of appellee will not overcome the "record" of anything. But in the absence of certification, it does overcome, unless our rules are repealed, a recital in the abstract of the appellant that testimony was closed on a given day earlier than December 26th, and that no testimony was thereafter received.

### 5.

It is said that, because it is not usual to open a case after both parties had rested, therefore, "it is not exacting too much. of appellee, when this is claimed, that he set up enough of the subsequent proceedings to overcome the presumption obtaining in favor of the record and certificates ordinarily regarded as conclusive;" that "otherwise the certainty of the recognized method of identifying the evidence must give way to the art of interposing frivolous denials, and the record, no matter how conclusively authenticated, be treated as open to contradiction by the mere denial of counsel," and that, therefore, "appellee's denial, standing alone, was not enough to overcome the record as made, and it is disregarded." It is deplorable, but I am too dense to grasp the force of this. When the appellant says in his abstract that it contains all the evidence and that same was duly preserved, and the appellee makes a "mere denial" which consists of the positive statement that more evidence was taken than the abstract contains, that it was taken later than the time covered by the abstract, and that it was not preserved; if thereafter the appellant asserts that the testimony was closed earlier than the time at which it was claimed the additional evidence was taken, and denies that any such was taken, it would seem to me that the mere fact, if it be a fact, that it was not usual to open cases after the testimony was closed would not in any manner affect the quality or effect of appellee's denial. I am unable to see why a denial of a statement that the testimony was closed at a stated time

attacks anything unusually sacred, nor why such denial must not as much be met by a certification as the denial of any other thing asserted by the appellant. In the last analysis, this creates an impossible situation, if our rules are to stand. If a denial be insufficient for want of definiteness, no certification is needed. If the denial be sufficiently specific, then, no matter what it is, nor to what it is addressed, the appellee can never be required to do more than to make the denial. Under the rule, there can never be a case in which, if a denial will serve at all, appellee need add anything to his "denial standing alone." The rule knows no difference resting on what is denied. It does not say that some denials require certification, but that *any* specific and material one does. There is not a possible situation in which a denial, if effective at all, is less effective because it stands alone. I can conceive of no reason why because the re-opening of a case is thought to be unusual that when an appellee in effect asserts that testimony was taken after the case was closed that he should "set up enough of the subsequent proceedings to overcome the presumption obtaining in favor of the record and certificates ordinarily regarded as conclusive." I am unable to understand just what either conclusiveness of certificates or presumption in favor of the record do to aid this appellant. The appellee says the testimony was taken on December 26th, and not preserved, and appellant responds that the testimony was closed on September 7th, and both parties then rested. Unless met by certification, the assertion that the testimony was taken on December 26th sufficiently asserts that there were proceedings subsequent, by means of which additional testimony, not preserved, was taken.

### 6.

A parenthetical reference in appellee's denial refers to the decree, and the majority finds that this is an attempt to contradict, or at least modify, that order set out in appellant's amendment, which order recites that testimony was closed on

September 7th.   Thereupon, it points out that the decree states that, on December 26th, the parties "introduced *their* evidence." The construction of these words is that they then introduced *all their* evidence, and that, as the record shows testimony was taken earlier than that, and certified to on September 30th, the decree erred in this recital, and "must have referred to the transcript of the evidence filed November 12, 1912, presumably for the use of the judge in reaching a decision," and that "this conclusion harmonizes the record by giving effect to all of its recitals," wherefore "we so construe the decree." The decree and the record can be harmonized otherwise. The statement in decree that, on a stated day, the parties submitted "their evidence" is not necessarily in conflict with a certificate made earlier that a transcript then signed and certified contains all the evidence taken. This recital can be harmonized as well, and perhaps more naturally, by construing it to mean that evidence of theirs, rather than all their evidence, was later put in. Be that as it may, appellant makes no claim that the decree errs, and no attempt was made to correct it, which would be the usual method for rectifying any mistaken recital thereof. For this unsought reformation by this court, the majority argues that such entries are usually prepared by counsel and presented for signature; that, therefore, such recitals are always to be read in the light of what has occurred in the case, and in the light of the entire record; that such rest, perhaps, on a custom which may have had its source when all judgments were entered as of the first day of the term; wherefore decrees are prepared as though everything connected with the hearing transpired on the day the decree was entered.

It has not been my view that formal decrees duly entered and appealed from may be thus reformed in the appellate court, and I find this to be *First Nat. Bank v. Eichmeier*, 153 Iowa, at 157. Of two defendants, K. E. and A. E., the latter did not answer. Nevertheless, the judgment recites that he appeared at the hearing "both by counsel and in person."

Notice of appeal was directed to both defendants, and the attorney for K. E. signed an admission of service as attorney for both defendants. In this court, there was "a mere denial, unsupported by affidavit or otherwise, that the counsel acknowledging service was attorney for A. E." But we held, that, though A. E. had in fact never appeared, the recital in the judgment that he had appeared "must be regarded as conclusive to the contrary, and the service regarded as sufficient," which is more of an attack than where, as here, *no* attack is made on the recitals. One wonders why the *Eichmeier* case was not disposed of on present lines by pointing out that it was quite customary to recite appearances of those who did not appear, and that, where the fact of appearance was challenged and it was ascertained that there had in fact been no appearance, such recital should be disregarded.

### 7.

Conceding, in one place, that the denial "which asserts in substance that material evidence was offered or introduced December 26, 1912," was not fully met, the opinion adds:

"There is room for suspicion that this assertion was inspired by the language of the decree, rather than any real diminution of the record;" that if this is so, "it is a perversion of the rules, the design of which is to aid, not obstruct, the presentation of the true record to this court."

This brings me to another point. If an assertion necessitates a certification, though the assertion be wholly unsupported, then the necessity for certification cannot be affected because a decree which is referred to in proof of the assertion may be held not to prove what is claimed. Whenever an assertion necessitates certain action, though there be *no* proof for the assertion, it is usually immaterial that it is not well proved. The majority, which concedes that, "Of course, a case might be opened even after both parties had rested," but asserts that such opening is not to be lightly admitted because unusual, should be able to see that it is at least as

usual as is the signing of decrees as matter of course, and making false recitals of appearances therein because of a custom to have the entry prepared by counsel and submitted for signature.

### 8.

Other portions of the opinion so confuse me, and seem so much to indicate conclusions which are utterly unnatural from the premise stated, so turn statements favorable to appellee into claims that argue against appellee, that I do not venture to deal with them at all, except by absolute quotation. This is said:

"The certification, if required, must necessarily be sufficiently specific, and no more so than to cover the denial. The latter did not relate to proceedings prior to December 26, 1912, and, therefore, an amendment to the abstract, setting out the record prior to that day, was not sustaining the abstract in the particulars denied by appellees. The mere fact that an inference from the record prior to that day might contradict or tend to contradict such denial, would not render its certification necessary to obviate taking the denial as true. Otherwise, the advantage of specific denials and certifications specifically covering them would be lost. The only object of certification is to settle the specific dispute raised by a denial; and when this is accomplished by the undisputed record, there is no occasion for certification. The amendment to the appellant's abstract, then, was not a denial of appellees' additional abstract, save as it asserted that 'no additional evidence was offered by either party.' Let us ascertain from the record, then, whether all the evidence offered or introduced is contained in the record before us; for, of course, it must have been extended in the transcript certified by the trial judge and official reporter, and made a part of the record."

In another place it is said that the conclusion here that,

in saying "their evidence" was introduced on December 26th, the court "must have referred to the transcript of the evidence filed November 12, 1912, presumably for the use of the judge in reaching a decision," harmonizes the record; and there is added this:

"But this does not fully meet the denial, which asserts, in substance, that material evidence was offered or introduced December 26, 1912, which they deny was made of record or preserved as by law provided, or included in the abstract."

Then comes the remark that there is room for suspicion that this assertion was inspired by the language in the recitals of the decree.

My density must be pardoned, but it does seem to me that every word of this does not have the slightest meaning on the question whether, if appellant asserts he has all the evidence, and appellee denies this, and says that evidence was taken later which is not in the abstract, and there is no certification, whether the denial of the appellee prevails or does not prevail. In fact, some of the language, used apparently to sustain the opposing conclusion, if it has any relevancy at all, indicates that the appellee's denial was not sufficiently met.

If no reference be had to the attempts at avoidance and explanation which the opinion makes, it seems patent that this appeal should be dismissed. All I can get out of studying these attempts, beyond being bewildered, is a reinforced conviction that the appeal should be dismissed.